**ENTERPRISE PRODUCTS PARTNERS, L.P. and Dixie Pipeline Company, Appellants,**

**v.**

**Catherine MITCHELL, Individually and as Administratrix to the Estate of Mattie L. Mitchell, Deceased, and as Administratrix to the Estate of Nacquandrea Mitchell, Deceased, O'Neal Pacley, Linda Mitchell, Johnny Jones,**

Carolyn Pacley, Samida Mitchell, Frank Pacley, Jim Pacley, Calvin Bettis, Lulu Bloxson, Ollie Mae Bonner, Johnny Pacley, James L. Pacley, Sanita Johnson, Sharon Willis, and Rochelle Nabores, Appellees.

No. 01–09–00653–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 10, 2011.

Reconsideration En Banc and Rehearing Overruled April 6, 2011.

Chad Flores, David M. Gunn, Fields Alexander, John S. Adcock, Murray Fogler, Beck, Redden & Secrest, L.L.P., Houston, TX, for Appellants.

Richard P. Hogan Jr., Hogan & Hogan, L.L.P., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION ON REHEARING

EVELYN V. KEYES, Justice.

Appellants, Enterprise Products Partners, L.P. ("Enterprise") and Dixie Pipeline Company ("Dixie"), filed a motion for en banc reconsideration of our August 19, 2010 opinion. We treat the motion for en banc consideration as a motion for rehearing, grant rehearing, and withdraw our August 19, 2010 opinion and judgment and issue this opinion and judgment in their place. The disposition of the case remains unchanged.

Enterprise and Dixie challenge the trial court's June 29, 2009 interlocutory order ruling that Texas law should govern the issue of recoverable compensatory damages with regard to all wrongful death and personal injury claims arising from a pipeline explosion. In one issue, Enterprise and Dixie argue that Mississippi law, rather than Texas law, should govern recoverable compensatory damages.

We affirm.

## Background

On the morning of November 1, 2007, a liquid propane pipeline operated by Dixie ruptured in a rural area near Carmichael, Mississippi. Upon its release into the air, the liquid propane changed to gas and formed a cloud that rose over a nearby neighborhood and ignited into a large fireball that could be seen and heard for miles around. The resulting fire killed two people, injured seven others, and resulted in the evacuation of approximately 60 families from their homes. Four homes were destroyed, several others were damaged, and more than 70 acres of the woods and grassland surrounding the site of the explosion were burned. The National Transportation Safety Board (NTSB) reported that approximately 10,253 barrels, or 430,000 gallons, of propane were released.

Appellees, Catherine Mitchell, O'Neal Pacley, Linda Mitchell, and Johnny Jones, as wrongful death beneficiaries of the two decedents, Mattie L. Mitchell and Nacquandrea Mitchell, along with Catherine Mitchell, Catherine Pacley, and Samida Mitchell as personal injury claimants and other plaintiffs who suffered property damage (collectively, plaintiffs) sued Dixie and Enterprise, Dixie's managing partner,[1] in Harris County, Texas. Dixie and Enterprise moved the trial court to apply Mississippi law to the issue of the amount of recoverable compensatory damages, arguing that the Restatement (Second) of Conflicts of Law's balancing test favors application of Mississippi's $1 million cap on noneconomic damages in civil actions.[2]

---

1. Enterprise was the managing partner of Dixie at the time of the explosion and had been Dixie's managing partner since July 1, 2005.

2. *See* MISS.CODE ANN. § 11–1–60 (2004) (providing limit of $ 1 million in awarding noneconomic damages against any civil defendant other than health care liability defendant, providing limit of $500,000 in awarding

Dixie and Enterprise argued that, as the domiciliary state of the plaintiffs, Mississippi has the greatest interest in determining the amount of compensation to be awarded to its residents and in protecting defendants doing business in its state. The plaintiffs argued that Texas law should apply because both Enterprise and Dixie have their principal place of business in Texas, the pipeline was manufactured in Texas, and Enterprise and Dixie control the pipeline's multi-state operation from Texas.

The trial court issued an order ruling that "the issue of recoverable compensatory damages with regard to all wrongful death and personal injury claims is to be governed by Texas law" and certifying the order for interlocutory appeal pursuant to Texas Civil Practice and Remedies Code section 51.014(d). This interlocutory appeal was filed.[3] Neither party disputes the application of Texas law to the remaining issues.

It is undisputed that Dixie and Enterprise are both Delaware corporations whose principal place of business is Houston, Texas. All of the wrongful death and personal injury plaintiffs are Mississippi residents and domiciliaries.[4] It is likewise undisputed that the failed segment of pipeline was manufactured in 1961 in Texas, that it was subsequently installed in Mississippi, and that the explosion occurred in

the state of Mississippi. Furthermore, the portion of the pipeline that exploded was part of a 1,300 mile pipeline in a 35,000 mile pipeline system and spanned from Texas through Louisiana, Mississippi, Alabama, Georgia, South Carolina, and North Carolina.

Decisions about Enterprise and Dixie's operations were made in Texas. Dixie's corporate representative indicated that its policies, procedures, and manuals all come from the Houston, Texas office, that the pressure, flow, and operation of valves and pumps are monitored and conducted from Houston via a computer system whose control system is likewise in Houston, and that the Houston employees are generally responsible for the operation of the pipeline. Furthermore, key employees such as the manager of pipeline integrity, the pipeline integrity engineer for this particular pipeline, and the pipeline controller responsible for monitoring this pipeline on the day of the explosion are all located in Houston, Texas. None of the pump stations or other facilities along the pipeline's route through Mississippi are manned on a routine basis, although Dixie does have about five employees who work in Mississippi.

## Choice of Law

■ Which state's law governs an issue is a question of law for the court to decide.

---

non-economic damages in medical liability actions, and defining noneconomic damages as "subjective, nonpecuniary damages" arising from an injury).

3. Section 51.014(d) of the Civil Practice and Remedies Code allows interlocutory appeal of otherwise unappealable orders if:
   (1) the parties agree that the order involves a controlling question of law as to which there is substantial ground for difference of opinion;
   (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation; and

(3) the parties agree to the order.
TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(d) (Vernon 2008).

4. Some of the plaintiffs claiming property damage are residents or domiciliaries of other states, but, by its plain language, the trial court's order does not affect the measure of damages on the claims of property damage, and neither party argues for the application of law from a jurisdiction other than Texas or Mississippi.

*Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848 (Tex.2000). Therefore, we review the trial court's decision to apply Texas law de novo. *See Minnesota Mining & Mfg. Co. v. Nishika Ltd.,* 955 S.W.2d 853, 856 (Tex.1996).

■ We decide choice of law issues by applying the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws. *Torrington Co.,* 46 S.W.3d at 848; *Hughes Wood Prods., Inc. v. Wagner,* 18 S.W.3d 202, 205 (Tex. 2000). Section 6 of the Restatement sets out general factors relevant to the choice of law:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Torrington Co.,* 46 S.W.3d at 848 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971)); *see also Hughes Wood Prods.,* 18 S.W.3d at 205.

■ Section 145 of the Restatement provides specific considerations relevant when applying the general conflict of laws principles to a tort case:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Torrington Co.,* 46 S.W.3d at 848 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971)); *see also Hughes Wood Prods.,* 18 S.W.3d at 205 & n. 1.

Section 145 also provides, "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in [section] 6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971); *see also Hughes Wood Prods.,* 18 S.W.3d at 205 (quoting section 145(1) of Restatement and holding that court of appeals erred by concluding that Texas law had most significant relationship to case and thus Texas law should apply to all issues rather than considering which state had most significant relationship to exclusive remedy issue, which was specific issue to be resolved). The Restatement's "most significant relationship test" includes a presumption in favor of applying the law of the place of the injury. Section 146, governing personal injuries, and section 175, governing wrongful death, create a presumption that

the law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 146, 175.

■ Using this presumption in favor of the law of the state where the injury occurred as the starting point for our analysis, we consider the various factors listed in the Restatement to determine if Texas

has a greater interest in the determination of the particular issue than Mississippi, the state where the injury occurred. *See id.* § 175 cmt. d. (also providing that courts should examine "the purpose sought to be achieved by their relevant local law rules and the particular issue involved"). The number of contacts with a state is not determinative; rather, we evaluate the contacts in light of the state policies underlying the particular substantive issue. *Torrington Co.*, 46 S.W.3d at 848.

In analyzing choice of law in the context of compensatory damages, the Texas Supreme Court has stated:

> The primary purpose of awarding compensatory damages in civil actions is not to punish the defendant, but to fairly compensate the injured plaintiff. A state's compensatory damages law balances the need to compensate the plaintiff against the goal of protecting resident defendants from undue liability and excessive litigation.
>
> Considering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability, are less important. Rather, the most important contacts in determining which state's law governs compensatory damages will usually be the "ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the defendant against financial hardship."

*Id.* at 848–89 (internal citations omitted).

In *Torrington*, the supreme court analyzed which state's law should apply to compensatory damages in a helicopter crash that killed two marines. *Id.* at 833. The marines were North Carolina residents whose domiciles were in Nebraska and Michigan, and at least two of the defendant corporations, Bell and Textron,

had their principal place of business in Texas. *Id.* at 849. In holding that the trial court correctly applied Texas law, the court stated,

> We have noted that a plaintiffs domiciliary state usually has a strong interest in seeing its compensatory damages law applied. But Texas, as the forum state, also has a significant interest in protecting resident defendants, such as Bell and Textron. And other *Restatement* factors weigh in favor of applying Texas law. For example, much of the conduct that allegedly caused the injury occurred in Texas. The helicopter that was involved in the crash was manufactured and delivered in Texas, several communications about the bearing failure ... were issued from Texas, and Torrington sent communications about the investigation to Bell in Texas. Moreover, Texas is the forum state and the parties acquiesced to the trial court's application of Texas law to the liability issue. "Ease in the determination and application of the law to be applied" is one of the factors to be considered in resolving choice-of-law questions under the *Restatement*.

*Id.* at 850 (internal citations omitted).

■ Here, Mississippi's contact with the tort arises from the fact that all of the wrongful death and personal injury plaintiffs were residents and domiciliaries of Mississippi at the time of the explosion. Mississippi has an interest in ensuring that its citizens receive adequate compensation so that the costs of injured residents are not borne by the public, but Mississippi's damages cap does not further that interest. Moreover, while the explosion and its resulting injuries occurred in Mississippi, we note that the pipeline could have exploded at any point along its 1,300 mile span. *See id.* at 849; *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.

1984) (rejecting using location of incident alone as method for determining which state's law should govern).

The policy behind Mississippi's Tort Reform Act of 2004, including the compensatory damages cap, was essentially "to end the state's 'hell-hole' reputation and attract more business and insurers to Mississippi." *See generally* MISS.CODE ANN. § 11-1-60 (2004) (providing limit of $1 million in awarding non-economic damages against any civil defendant other than health care liability defendant, providing limit of $500,000 in awarding non-economic damages in medical liability actions, and defining noneconomic damages as "subjective, nonpecuniary damages" arising from an injury); H.B. 13, 2004 Leg., 2d Ex.Sess. (Miss.2004) (amending section 11-1-60 and others); Mark Behrens & Cary Silverman, *Now Open for Business: The Transformation of Mississippi's Legal* Climate, 24 MISS. C.L.REV. 393, 415-16 (2005) (discussing "comprehensive civil justice reform bill, H.B. 13" that, among other provisions, amended section 11-1-60 to limit non-economic damages). Those policy concerns are not implicated here. Mississippi's interest in applying its damages cap to lawsuits in that state has little applicability to a lawsuit brought in a different state against defendants domiciled in that different state where the tortious conduct also occurred in that other state. When the incident occurred, Enterprise and Dixie had only limited business activity in the state of Mississippi, and the pipeline, which was built through the state of Mississippi in the 1960s, was not built in reliance on this reform, as the Tort Reform Act was passed in 2004.

Texas, however, is the forum state with a significant interest in protecting resident defendants, and the parties have acquiesced to the trial court's application of Texas law to all other issues in this case.

Both of the defendants, Enterprise and Dixie, are corporations with their principal place of business in Texas, and the decisions regarding maintenance and operation of the pipeline—i.e., the conduct causing the injury—occurred in Texas. Additionally, Texas's compensatory damages law is at least equally capable of serving the interest of fairly compensating injured plaintiffs. *See Torrington Co.*, 46 S.W.3d at 848 (holding that "we must evaluate the contacts in light of the state policies underlying the particular substantive issue" and that "[t]he primary purpose of awarding compensatory damages in civil actions is ... to fairly compensate the injured plaintiff"). Thus, here, just as in *Torrington*, all of these factors weigh in favor of applying Texas law. *See id.* at 848.

Enterprise and Dixie argue in their brief that *Torrington* is distinguishable from the present case because *Torrington* involved "the unique setting of an aviation crash" while this case does not, because "the unique background of the Mississippi legislation limiting compensatory damages" creates a stronger policy interest in favor of applying Mississippi law than was present in *Torrington*, and because all of the plaintiffs here are residents and domiciliaries of Mississippi, unlike the claimants in *Torrington*, whose residences and domiciles implicated three different states. We disagree. As we have already discussed, the "unique background" of the Mississippi damages cap is not implicated by these facts, as neither Enterprise nor Dixie maintained any significant business presence in Mississippi. *See id.* at 849; *Duncan*, 665 S.W.2d at 421. Furthermore, even considering that all of the wrongful death and personal injury plaintiffs in this case share the same state residence and domicile, that one factor does not overwhelm the other considerations. *See Torrington Co.*, 46 S.W.3d at 848-49; *Hughes Wood Prods.*, 18 S.W.3d at 205; RESTATE-

MENT (SECOND) OF CONFLICT OF LAWS § 145(1).

We conclude that Texas law should be applied to the issue of compensatory damages available to the wrongful death and personal injury plaintiffs in this case. Thus, the trial court's interlocutory order was proper.

We overrule Enterprise and Dixie's sole issue.

### Conclusion

We affirm the interlocutory order of the trial court.