ACCEPTED
01-15-00715-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/9/2015 8:32:15 PM
CHRISTOPHER PRINE
CLERK

## No. 01-15-00715-CV

In the Court of Appeals
For The First District of Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

10/9/2015 8:32:15 PM

CHRISTOPHER A. PRINE
Clerk

### *In re*:

# CVR Energy, Inc. and CVR Refining, LP,

### *Relators*

Original Proceeding from the 268th Judicial District Court
Fort Bend County, Texas, Hon. Brady G. Elliott presiding

Tr. Ct. No. 2015-DCV-220330

# REAL PARTY IN INTERESTS' RESPONSE TO PETITION FOR WRIT OF MANDAMUS

David M. Medina, SBN: 00000088
5300 Memorial Dr, Ste 890
Houston, TX 77007

Timothy A. Hootman, SBN 09965450
2402 Pease St
Houston, TX 77003

Gary M. Riebschlager, SBN 16902200
801 Congress, Ste 250
Houston, TX 77002

Richard L. Tate, SBN 19664460
206 South 2nd St
Richmond, TX 77469

ATTORNEYS FOR REAL PARTIES IN INTEREST, DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, AND WENDY NIEMEYER

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ 2

INDEX OF AUTHORITIES ........................................................... 4

STATEMENT OF FACTS .............................................................. 6

    a.    **Introduction to the statement of facts.** ................... 6

    b.    **The corporate structure and the "Services Agreement" placing the negligent acts in Texas.** ................................. 7

    c.    **The corporate officers; their location; and their testimony.** ................................ 11

    d.    **The related case currently pending in Fort Bend County.** .................................. 13

    e.    **The trial court's consideration of the record and its ruling.** .............................. 13

SUMMARY OF ARGUMENT ................................................... 16

ARGUMENT AND AUTHORITIES ........................................... 17

    a.    **Introduction.** ............................................. 17

    b.    **The applicable standards of review.** ....................... 19

        i.    *The mandamus standard of review in general.* ................................................ 19

        ii.    *The mandamus standard of review as applied to a trial court's ruling on a forum non conveniens motion to dismiss under section 71.051(b) of the Civil Practice & Remedies Code.* .......................... 20

    c.    **The law of forum non conveniens.** ........................ 21

    d.    **Discussion.** ............................................. 23

        **Factor 1**—*alternate forum.* .......................... 24

        **Factor 2**—*adequacy of alternate forum.* ...................... 25

        **Factor 3**—*substantial injustice.* .................................. 26

        **Factor 4**—*jurisdiction over all defendants.* ................... 28

**Factor 5**—*private/public interests.* ............................. 29

**Factor 6**–*proliferation of litigation.* ........................... 32

e.     **Conclusion.** .............................................................. 34

PRAYER ....................................................................................... 35

CERTIFICATE OF WORD COUNT ...................................................... 35

CERTIFICATE OF SERVICE ............................................................. 36

RULE 52.3(J) CERTIFICATION......................................................... 36

# INDEX OF AUTHORITIES

***Texas Cases:***

*Enterprise Prod. Partners v. Mitchell*, 340 S.W.3d 476, 479-80 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd by agr.)..................25

*Flaiz v. Moore*, 359 S.W.2d 872, 875 (Tex. 1962)...............................32

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)................................... 29

*Gurvich v. Tyree*, 694 S.W.2d 39 (Tex. App.—Corus Christi 1985, no writ)...................................................................................... 32

*Hill v. Perel*, 923 S.W.2d 636 (Tex. App.—Houston [1st Dist.] 1995, no pet.)..................................................................................25

*In re BPZ Res., Inc.*, 359 S.W.3d 866 (Tex. App.—Houston [14th Dist.] 2012)(orig. proceeding)............................................... 28, 30, 33

*In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379 (Tex. 2005) (orig. proceeding) (per curiam)...............................................19

*In re Ensco Offshore Int'l Co.*, 311 S.W.3d 921 (Tex. 2010)......... 23, 33

*In re Gen. Elec. Co.*, 271 S.W.3d 681 (Tex. 2008)..............................23

*In re Mantle Oil & Gas*, LLC, 426 S.W.3d 182 (Tex. App.—Houston [1st Dist.] 2012) (orig. proceeding).................................. *passim*

*In re McAllen Med. Ctr., Inc.,* 275 S.W.3d 458 (Tex. 2008) (orig. proceeding)............................................................................ 19

*In re Omega Protein, Inc.,* 288 S.W.3d 17 (Tex. App.—Houston [1st Dist.] 2009) (orig. proceeding)......................................... *passim*

*In re Pirelli Tire, L.L.C.,* 247 S.W.3d 670 (Tex. 2007) (orig. proceeding)..............................................................................20, 21

*In re Reece,* 341 S.W.3d 360 (Tex. 2011) (orig. proceeding)...............19

*In re Smith Barney, Inc.,* 975 S.W.2d 593 (Tex. 1998)..................... 21

*In re Team Rocket, L.P.,* 256 S.W.3d 257 (Tex. 2008) (org. proceeding).............................................................................. 19

*Owens Corning v. Carter*, 997 S.W.2d 560 (Tex. 1999).....................22

*Seung Ok Lee v. Ki Pong Na*, 198 S.W.3d 492 (Tex. App.—Dallas 2006, no pet.).........................................................................20

*Tullis v. Georgia-Pacific Corp.*, 45 S.W.3d 118 (Tex. App.—Fort Worth 2000, no pet.)........................................................22

*Young Refining Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)........................... 26

## *Statutes:*

K.S.A. § 60-258a............................................................. 26

K.S.A. § 60-513a(4)......................................................... 26

P.I.K 4th § 171.02........................................................... 26

TEX. CIV. PRAC. & REM. CODE § 71.051........................................ *passim*

TEX. R. EVID. 202........................................................... 32

# STATEMENT OF FACTS

**a. Introduction to the statement of facts.**

Donald and Jennifer Collier are married and live in Independence, Kansas (*App.* Tab 4, p. 1). Dale and Wendy Niemeyer are married and live in South Coffeyville, Oklahoma (*id.*). Donald and Dale were severely injured while working at an oil refinery in Coffeyville, Kansas when a pump leak caused a major explosion (*id.*, p. 3).[1] The negligence and gross negligence leading to the explosion took place in Sugar Land, Texas (*id.*, p. 4-5). Moreover, key documentary and testimonial evidence bearing on the acts of negligence and gross negligence are also located in Sugar Land, Texas, and therefore, the Colliers and Niemeyers filed suit in Fort Bend County as the most logical forum to pursue their personal injury claims against the responsible parties.

Relators' assertion in its petition for writ of mandamus that "virtually all material witnesses and evidence regarding the accident are located in Kansas" in support of its claim that the trial court

---

[1] According to the defendants' General Counsel Edmund S. Gross, "the accident occurred when [a] pump[] within the refinery experienced a shaft seal failure which caused the release of volatile vapor which ignited." (*App.*, Tab 7, Exh. 1, p. 2).

6

abused its discretion in keeping the case in Texas is not supported by the record. (*See* Issue Presented in Pet. for Mand. at x.). What is supported by the record, and was therefore the factual basis of Judge Elliott's ruling in denying Relators' forum non conveniens motion to dismiss, is the following.

**b.    The corporate structure and the "Services Agreement" placing the negligent acts in Texas.**

CVR Energy, Inc., CVR Refining, LP, and CVR Refining GP, LLP, signed a document entitled "Service Agreement" that is key to the allegations of negligence in this case and in particular resolution of the forum non conveniens issue (*App.* Tab 11). In the Service Agreement, CVR Refining GP, LLP and CVR Refining, LP agree that CVR Energy, Inc. will make the intellectual operational decisions regarding the plant that exploded in Kansas along with the intellectual operational decisions regarding five other plants—that is, CVR Energy, Inc. decides how and when the plant that exploded will be operated and maintained (*Id.*). The Service Agreement provides that the intellectual operational decisions to be made by CVR Energy, Inc. include:

- Services in capacities equivalent to the capacities of corporate executive officers.
- Safety and environmental advice.
- Administrative and professional services, including legal, accounting, human resources, insurance, tax, credit, finance, government affairs, and regulatory affairs.
- Manage the Service Recipients' day-to-day business and operations, including managing its liquidity and capital resources and compliance with applicable law.
- Recommend capital raising activities, the entry into credit facilities or other credit arrangements, structured financings or changes, or other modifications in the capital structure, including repurchases.
- Recommend or, if approval is not required, engage third party service providers, including accountants, lawyers or experts.
- Manage the Service Recipients' property and assets in the ordinary course of business.
- Manage or oversee litigation, administrative or regulatory proceedings, investigations or any other reviews of the Services Recipients' business or operations that may arise in the ordinary course of business or otherwise.
- Establish and maintain appropriate insurance policies.
- Recommend payment of dividends and distribution of equity interests.
- Attend to calculation and payment of taxes, and filing of tax returns.
- Manage or provide advice or recommendations for other projects (*App.* Tab 11).

CVR Energy, Inc. is a Delaware corporation with its principal executive offices in Sugar Land, Texas, which is where the intellectual operational decisions that led to the explosion of the plant in Kansas

8

were made. (*App.* Tab 4, p. 2). CVR Energy, Inc. is engaged in petroleum refining and nitrogen fertilizing manufacturing through its limited partnerships, which include CVR Refining, LP and CVR Partners, LP (*App.* Tab 9, Exh. A & F). CVR Refining, LP is a Delaware limited partnership also located in Sugar Land, Texas, formed by CVR Energy, Inc. (*Id.* at Exh. B & F). CVR Refining GP, LLP is the general partner of CVR Refining, LP (*App.* Tab 11, p. 1).[2] One of the plants is operated under the name of CVR Refining, **LLC**, which is distinct from CVR Refining, **LP**.

The Coffeyville oil refinery that exploded is owned by Coffeyville Resources Refining Marketing, LLC, which is a Kansas business entity (called "Coffeyville Resources") (*App.* 7, Exh. 1, p. 1). Coffeyville Resources is a subsidiary of CVR Energy, Inc. In that regard, Relators state on page 2 of their memorandum in support of the motion to dismiss that "CRV Energy, Inc. owns the General Partnership and 66% of the Limited Partner units of CVR Refining, LP" and that Coffeyville Resources "is a wholly-owned subsidiary of CVR Refining,

---

[2] "[CVR Refining GP, LLC] is the owner, directly or indirectly, of CVR Refining, LLC, Wynnewood Refining Company, LLC, Coffeyville Resources Refining & Marketing, LLC, Coffeyville Resources Crude Transportation, LLC, Coffeyville Resources Terminal, LLC and Coffeyville Resources Pipeline, LLC" (*App.* Tab 1, p. 1).

LP (*App.* 7, p. 2). Pursuant to the Service Agreement, CVR Energy, Inc. makes the intellectual operational decisions for the Coffeyville Resources plant that exploded from its office in Sugar Land, Texas. There are at least five witnesses located in Sugar Land that will testify and produce documents about the decisions made under the Services Agreement leading to the explosion (*App.* 9, p 8-9 & Exh. H & I).

The corporate structure is graphed as follows:

| **CVR Energy, Inc.** |
| --- |
| *(Del Corp headquartered in TX; makes management, maintenance & operational decisions; owns 66% of CVR Refining, LP)* |

↓

| **CVR Refining GP, LLP** |
| --- |
| *(General Partner of CVR Refining, LP which is owned by CVR Energy, Inc.; signed Service Agreement allowing CVR Energy, Inc. to operate plants)* |

↓

| **CVR Refining, LP** |
| --- |
| *(Located in Sugarland, Texas; owned by CVR Energy, Inc. which owns the 6 plants; signed Service Agreement allowing CVR Energy, Inc. to operate plants)* |

↓

| **Six LLCs Holding Six Plants thru CVR Refining, LLC** |
| --- |
| 1. Coffeyville Resources Refining & Marketing, LLC (*plant at issue; "wholly-owned subsidiary of CVR Refining, LP*)|
| 2. Coffeyville Resources Crude Transportation, LLC |
| 3. Coffeyville Resources Terminal, LLC |
| 4. Coffeyville Resources Pipeline, LLC |
| 5. Wynnewood Refining Company, LLC |
| 6. Wynnewood Energy Company, LLC |

## c. The corporate officers; their location; and their testimony.

Robert Haugen is "Executive Vice President of Refining Operations" for Coffeyville Resources, CVR Energy, Inc., and CVR Refining, LP—Mr. Haugen's office is in Sugar Land and he resides in Houston (*App.* Tab 9, Exh. H, p. 6). Mr. Haugen testified that he is "responsible for day-to-day operations and maintenance personnel" and that the environmental, capital-project, and pipeline operations groups of the companies report to him (*id* at pp. 9, 10-15).

Jay Finks is a non-decision making employee of CVR Energy, Inc. with a fancy, but misleading title called "Director of Investor Relations" who has his office in Kansas and has the duty of paying bills when instructed to do so by the decision makers from CVR Energy, Inc. and CVR Refining, LP in Texas (App. Tab 9, Exh. I, pp. 6-24).

The affidavit of Edmund S. Gross was attached to Relators' memorandum in support of the motion to dismiss, and states as follows:

> I, Edmund S. Gross, served as the General Counsel to CVR Energy, Inc., CVR Refining, LP, and Coffeyville Resources ... for a number of years prior to my retirement on December 31, 2014. I have personal knowledge of the facts and information

11

provided below, and I am competent to testify concerning these matters. The accident which injured Donald R. Collier and Dale A. Niemeyer occurred while they worked at the refinery of Coffeyville Resources ..., all in Coffeyville, Kansas, on July 28, 2014. Two other [Coffeyville Resources] employees were also injured, one fatally, in the accident. All employees or their families received workers' compensation benefits for the injuries and losses sustained. The accident occurred when one of [Coffeyville Resources'] pumps within the refinery, P-2217, experienced a shaft seal failure which caused the release of a volatile vapor which ignited. The investigation of the pump failure was undertaken at the refinery in Coffeyville, Kansas and at a shop located in Lee's Summit, Missouri. The pump, which is estimated to weigh 1,000 pounds is stored in Coffeyville, Kansas. All witnesses to the accident were either [Coffeyville Resources] employees who were at work at the time, or medical or emergency personnel from the Coffeyville, Kansas area who arrived soon thereafter. I believe that the majority of the physicians, healthcare providers and hospitals that initially cared for Mr. Collier and Mr. Niemeyer are either in Kansas or in the adjacent areas of Tulsa, Oklahoma. CVR Energy, Inc. is registered to do business and doing business in the State of Kansas. CVR Energy, Inc. is amenable to process in the State of Kansas through its resident agent, The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603. CVR Refining, LP is registered to do business and doing business in the State of Kansas. CVR Refining, LP is amenable to service within the State of Kansas through its resident agent, Corporate Service Company, 200 SW 30th Street, Topeka, Kansas 66611. (*App.* 7, Exh. 1) (numbering of paragraphs removed).

**d.     The related case currently pending
in Fort Bend County.**

Another plant owned by Relators and located in Oklahoma also exploded which is within 100 miles of the plant in this case.  That case is currently pending in cause number 13-DCV-209679, in the 434th Judicial District of Fort Bend County, Texas and is currently set for trial.  (App. 9, pp. 3, 6).  Relators have never complained that that proceeding is inconvenient and extensive discovery, including depositions in Oklahoma has occurred.   (*Id.*).   The trial court specifically asked about this other pending case at the hearing on the motion to dismiss.  (*App.* 2, pp. 29-30).

**e.     The trial court's consideration of
the record and its ruling.**

It is clear from the reporter's record of the hearing on the motion to dismiss that the trial court considered all of the circumstances and the factors required by section 71.051(b) of the Civil Practice & Remedies Code regarding a forum non conveniens motion to dismiss, including the problems associated with taking testimony by deposition or trial and the applicability of Kansas law. (*App.* 2, pp. 9-13).   The trial court specifically considered the contested factual issues as the following portion of the record exemplifies:

The Court:    First, tell me what the involvement of the Sugar Land corporations were in the Kansas refinery that makes them more than just an administrative operation. What will you be able to show me in evidence that shows they had direct operating control over that Kansas refinery?

Mr. Tate:     ... [T]he heart of this case is going to be decisions made right here in Sugar Land, Texas not to spend the money that was allocated in the budget under a management of change forum to make the specific improvement on this hydrogen separator that would have prevented this accident. Now, I'm going to come back to that in a minute; but he also –

The Court:    Well, let's talk about that a little.

Mr. Tate:     Okay.

The Court:    And I perceived in the pleadings that there was – there's issues involving the management direction of the Kansas refinery.

Mr. Tate:     Right.

The Court:    In listening to what you just said, there's certainly a difference between budget and application of that budget.

Mr. Tate:     Right.

The Court:    The negligence would have to fall in that gray area in between and the degree of control exercised by the Sugar Land company over the Kansas refinery.

Mr. Tate:     Exactly, Your Honor. And Exhibit –

The Court:    And I think – and I'm sure you perceive where I'm going. If that is going to be the primary issue, then that may drive a decision here; or it may drive a decision to Kansas, because, "Okay. We need to do this"; and the Kansas operators' not doing it is entirely two different things.

Mr. Tate:     Well, the Kansas operators can't do it until Sugar Land tells them to. Exhibit F, Your Honor, to our – to our response is an excerpt from Form 10-Q for CVR

14

|  |  |
|---|---|
|  | Refining, Inc.; and it discusses in very small print the shared services agreement and the responsibilities that CVR Energy and CVR Refining undertake under the management services agreement to provide daily day-to-day operations and supervision of the operations of their – of the Coffeyville refinery and the Wynnewood refinery which incidentally is the subject of the lawsuit down in Judge Shoemaker's court. |
| The Court: | "Operational" I perceive to be, "I'm the guy on the ground; I'm the guy who tells the guy to turn it off." |
| Mr. Tate: | Yes. |
| The Court: | Administrative may differentiate in saying, "This is our rules and regulations.  You have to follow them."  There's a gap there. |
| Mr. Tate: | No. |
| The Court: | And that is an important gap because that determines in my mind whether this should be a Kansas case or this should be a Texas case.  (*App.* 2, pp. 18-22). |

The trial court proceeds to ask a series of questions further developing this same line of conversation.  (*App.* 2, pp. 22-24).

At the close of the hearing, the trial court denied the motion to dismiss.  (*App.* 2, p. 33).

15

# SUMMARY OF ARGUMENT

This Court's opinions in *In re Mantle Oil & Gas*, LLC, and *In re Omega Protein* instruct that a key focus of forum non conveniens analysis is on whether the alleged negligence of a defendant took place in Texas or another state. When the negligence occurred within a corporate office located in Texas, the private and public interests of § 71.051(b)(5) weigh heavily in favor of keeping the case in Texas.

Relators argue that "virtually all witnesses and evidence surrounding the cause of the fire, the events occurring during and after the fire, and damages are located in Kansas and Oklahoma, outside subpoena range of the Fort Bend County, Texas trial court." However, the fact that a fire and the resulting injuries occurred is not contested; everyone agrees that this happened. Rather, the *only* contested issue is whether the decisions regarding the plant that took place in Relators' Sugar Land offices were negligent and proximately caused the explosion and injuries to the Colliers and the Niemeyers. Because the trial court focused precisely on this point in denying the motion to dismiss—as required by *In re Mantle Oil & Gas*, LLC, and *In re Omega Protein*—there was no abuse of discretion and mandamus relief should be denied.

# ARGUMENT AND AUTHORITIES

## a.    Introduction.

Relators argue that mandamus relief is in order because the trial court abused its discretion in denying their forum non conveniens motion to dismiss under section 71.051(b) of the Civil Practice & Remedies Code.  In this regard, Relators claim (1) Kansas is a more appropriate and convenient forum for the parties, (*App.* 7, pp. 4-8), and (2) Kansas law applies and therefore Kansas courts are better positioned than Texas courts to adjudicate the controversy. (*App.* 7, pp. 9-11).  Relators' sum up their entire argument by stating:

> In litigation between Kansas parties over an accident that occurred in Kansas related to an employment relationship in Kansas, for which Kansas law will apply, a petition filed in Fort Bend County, Texas has little, if any, relationship to the cause of action.  (App. 7, p. 12).

This entire argument hangs on the misleading factual assertion that "virtually all witnesses and evidence surrounding the cause of the fire, the events occurring during and after the fire, and damages are located in Kansas and Oklahoma, outside subpoena range of the Fort Bend County, Texas trial court."  (*See* Issue Presented in Pet. for Mand. at x.).

17

The events during and after the fire and damages are *not* the contested facts in this case. Everyone agrees that a fire occurred and that serious damages to the Colliers and Niemeyers resulted from that occurrence. What *is* contested is whether the managerial and operational decisions made in Sugar Land, Texas pursuant to the Service Agreement were the proximate cause of the fire and damages that took place in Kansas. All of the witnesses and documents bearing on *those* decisions are located in Sugar Land, Texas. As the trial court said: "*And that is an important gap because that determines in my mind whether this should be a Kansas case or this should be a Texas case*" (*App.* 2, pp. 18-22). Therefore the trial court was well within its discretion in denying the motion to dismiss on the grounds that Texas has a *public interest* in adjudicating negligence occurring on Texas soil and the Colliers and the Niemeyers have a *private interest* in litigating the only contested issue in the forum where the witnesses and documents as to that issue are located.

It is worth noting at the outset that the most relevant authority for this Court's determination of this case is *In re Mantle Oil & Gas*, LLC, 426 S.W.3d 182 (Tex. App.—Houston [1st Dist.] 2012) (orig.

18

proceeding).   Another key case is *In re Omega Protein, Inc.,* 288 S.W.3d 17 (Tex. App.—Houston [1st Dist.] 2009) (orig. proceeding).

**b.     The applicable standards of review.**

*i.     The mandamus standard of review in general.*

Mandamus is appropriate when the relator demonstrates that (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece,* 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts.  *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *In re Mantle Oil & Gas*, 426 S.W.3d at 187. The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.,* 256 S.W.3d 257, 262 (Tex. 2008) (org. proceeding).  Because this balance depends heavily on circumstances, it is guided by analysis of principles rather than simple rules that treat cases as categories.  *In re McAllen Med. Ctr., Inc.,* 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding).   In evaluating benefits and

19

detriments, an appellate court considers whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential,* 148 S.W.3d at 136. A reviewing court should also consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Id.* Finally, a reviewing court should consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.*

> ii. *The mandamus standard of review as applied to a trial court's ruling on a forum non conveniens motion to dismiss under section 71.051(b) of the Civil Practice & Remedies Code.*

A trial court's ruling on a forum non conveniens motion to dismiss is reviewed for a clear abuse of discretion. *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007) (orig. proceeding) (abuse of discretion where trial court *denied* forum non conveniens motion to dismiss); *Seung Ok Lee v. Ki Pong Na*, 198 S.W.3d 492, 495 (Tex. App.—Dallas 2006, no pet.) (abuse of discretion where trial court *granted* forum non conveniens motion to dismiss); *In re Mantle Oil*

*& Gas*, 426 S.W.3d at 187. An order denying a motion to dismiss based on forum non conveniens may be reviewed in a mandamus proceeding. *In re Pirelli Tire*, 247 S.W.3d at 679; *In re Mantle Oil & Gas*, 426 S.W.3d at 198.

**c.      The law of forum non conveniens.**

The forum non conveniens doctrine applies when a dispute turns on a claim arising in another state (or country) and the parties are before a court which, under the general jurisdictional statutes, has the power to determine the type of controversy involved. The principle of forum non conveniens is that, given these assumptions, the court nevertheless, in the exercise of sound judicial discretion, may resist the imposition of such litigation on its jurisdiction.[3] In a personal injury case, a defendant may assert a forum non conveniens motion to dismiss pursuant to section 71.051 of the Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM. CODE § 71.051(i) ("This section applies to actions for personal injury or wrongful death."); *see also In re Mantle Oil & Gas*, 426 S.W.3d at 187-88. The relevant part

---

[3] *See In re Smith Barney, Inc.*, 975 S.W.2d 593 (Tex. 1998) (The rule of forum non conveniens does not prohibit a court from entertaining a case it ought to hear, but rather, it protects courts from being compelled to hear cases when doing so would be fundamentally unfair to defendants, the public, or both.)

of section 71.051 for purposes of this mandamus proceeding is subsection (b), which states[4]:

> If a court of this state, on written motion of a party, finds that in the interest of and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:
>
> (1) an alternative forum exists in which the claim or action may be tried;
>
> (2) the alternate forum provides an adequate remedy;
>
> (3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;
>
> (4) the alternative forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;
>
> (5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternative forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and

---

[4] Subsection (b) does not apply to Texas residents. *Id.* at § 71.051(e); *Owens Corning v. Carter*, 997 S.W.2d 560 (Tex. 1999); *Tullis v. Georgia-Pacific Corp.*, 45 S.W.3d 118 (Tex. App.—Fort Worth 2000, no pet.). Here, the Colliers and Niemeyers are residents of Kansas and Oklahoma, and therefore, subsection (b) applies.

22

(6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.[5]

Regarding section 71.051(b), this Court stated in *In re Mantle Oil & Gas* the following:

> The doctrine of forum non conveniens has always afforded great deference to the plaintiff's choice of forum. However, the doctrine generally affords substantially less deference to a nonresident's forum choice. The forum non conveniens doctrine recognizes that the plaintiff's choice must sometimes yield in the public interest, and in that interest of fundamental fairness. Dismissal on forum non conveniens grounds is appropriate when sufficient contacts between the defendant and the forum state exist so as to confer personal jurisdiction, but the case itself has no significant connection to the forum state.

426 S.W.3d at 187-88 (citations and quotation marks omitted).

## d.  Discussion.

Resolution of this mandamus proceeding turns on Relators' assertion that "virtually all witnesses and evidence surrounding the cause of the fire, the events occurring during and after the fire, and damages are located in Kansas and Oklahoma, outside the subpoena

---

[5]  TEX. CIV. PRAC. & REM. CODE § 71.051(b); *see generally In re Gen. Elec. Co.*, 271 S.W.3d 681 (Tex. 2008) (discussing how section 71.05(b) has been amended and no longer places the burden of proof on a particular party in regard to the factors enumerated in the statute.); *see also In re Ensco Offshore Int'l Co.*, 311 S.W.3d 921, 927 (Tex. 2010); *In re Mantle Oil & Gas*, 426 S.W.3d at 188 ("The statute also does not contain any language placing the burden of proof on a particular party[.]").

range of the Fort Bend County, Texas trial court." (*See* Issue Presented in Pet. for Mand. at x.). This assertion is misleading in that it misses the point of what is contested in this case. It is *not* contested that a disastrous fire resulting in severe injuries to the Colliers and the Niemeyers took place in Kansas. The fire and the injuries are a given. What *is* contested is whether the intellectual decisions as to how the plant should be maintained and operated that occurred in an office in Sugar Land, Texas, were negligence, gross negligence, or the proximate cause of the explosion, fire, and resulting personal injuries. All of the witnesses and supporting documentary evidence as to *this* issue are located in Sugar Land, Texas. In this regard, Relators state on page 29 of their petition for writ of mandamus that, "Plaintiffs clearly hope to develop a theory that Relators' corporate decisions somehow affected the pump seal leak."

With this in mind, a discussion of the six factors listed in section 71.051(b) as applied to the facts in this case are in order.

**Factor 1.** *An alternative forum exists in which the claim or action may be tried.* TEX. CIV. PRAC. & REM. CODE § 71.051(b)(1).

"An alternate forum is one in which the defendant is amenable to process." *In re Mantle Oil & Gas*, 426 S.W.3d at 189. Here,

24

Relators are amenable to process in Kansas, and therefore, Kansas is an alternative forum where this case could be tried if it is not tried in Texas.

**Factor 2.** *The alternate forum provides an adequate remedy. Id. at § 71.051(b)(2).*

"An alternate forum is inadequate if the remedies that it offers are so unsatisfactory that they comprise no remedy at all." *In re Mantle Oil & Gas*, 426 S.W.3d at 189. Before an alternate forum analysis is even required in this case this Court must first conclude that Kansas law applies in the first place.

Texas law applies here according to the conflict of laws' "most significant relationship test" because the place where the conduct causing the injury occurred is Sugarland, Texas. *See Enterprise Prod. Partners v. Mitchell,* 340 S.W.3d 476, 479-80 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd by agr.).[6] Moreover, the negligence laws

---

[6] It is also plausible that under the "most significant relationship test" that Texas law regarding *liability* applies *and* that Kansas law regarding *remedies* applies because the test requires consideration of "the place where the injury occurred" (which is Texas) and "the place where the conduct causing the injury occurred" (which is Kansas). *Id.* at 480. However, even this scenario has been specifically address by the First Court of Appeals with the conclusion that "[q]uestions of substantive law are controlled by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained." *Hill v. Perel*, 923 S.W.2d 636, 639 (Tex. App.—Houston [1st Dist.] 1995, no pet.).

of Kansas and Texas are so similar that there is in fact no conflict of laws problem present, and therefore, there is no need to even engage in a conflict of laws analysis. *Young Refining Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). For example, Kansas law, like Texas law, provides for comparative negligence, K.S.A. § 60-258a, a two-year limitations period for personal injury claims, K.S.A. § 60-513a(4), and economic damages flowing from bodily injury. P.I.K 4th § 171.02.

Assuming this Court were to get past the above problems and conclude that Kansas law applies to this case, then Kansas would be an alternative forum that could provide an adequate remedy if this case is not litigated and tried in Texas and this Court were to conclude that Kansas law applies.

**Factor 3.** *Maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party. Id. at § 71.051(b)(3).*

When evaluating the "substantial injustice" factor, "the trial court considers, among other things, the location of relevant documents, and evidence and whether a majority of witnesses may be reached by compulsory process in Texas, which are also considerations under the fifth factor—the balance of private

26

interests." *In re Mantle Oil & Gas*, 426 S.W.3d at 192. In this regard, the mere "presence of a corporate headquarters is an insufficient basis for keeping a nonresident's suit in Texas when all of the other factors favor another forum." *In re Omega Protein*, 288 S.W.3d at 23.

It is quite another thing, however, when the negligence at issue took place *at the corporate headquarters*, and the key witnesses and documents bearing on that negligence are at that location. For example, in *In re Mantle Oil & Gas*, the decisive fact as to the most convenient forum was the negligence in installation of a blowout preventer in Louisiana because there was no allegation of negligence originating at the defendants company base in Texas. 426 S.W.3d at 195 ("This case involves a Texas limited liability company based in Friendswood, Texas, and the Alcee plaintiffs allege that Mantle Oil committed, in Texas, negligent acts in operating the Well, leading to the blowout. Thus, we assume, without deciding, that this litigation does have at least some relation to the citizens of Galveston County. However, Mantle Oil contends that the proximate cause of the Alcee plaintiffs' alleged injuries is the blowout preventer that apparently

27

failed and that was installed by Cajun Well, a Louisiana contractor.") (citation omitted).

In short, a "court shall consider the extent to which the injury resulted from acts or omissions that occurred in Texas." *In re Mantle Oil & Gas*, 426 S.W.3d at 194 (citing *In re Ensco*, 311 S.W.3d at 926 and *In re BPZ Res., Inc.*, 359 S.W.3d 866, 875 (Tex. App.—Houston [14th Dist.] 2012) (orig. proceeding). Here, the only contested issue is whether the acts and omissions *within the Sugar Land, Texas office* resulted in the explosion in Kansas. And this is exactly what the trial court focused on in making its ruling as clearly exemplified by its comments during the hearing on the motion to dismiss: "*And that is an important gap because that determines in my mind whether this should be a Kansas case or this should be a Texas case*" (*App.* 2, pp. 18-22).

**Factor 4.** *The alternative forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim. Id.* at § 71.051(b)(4).

"The fourth factor is whether the alternate forum can exercise jurisdiction over all the defendants." *In re Mantle Oil & Gas*, 426 S.W.3d at 194. Kansas, just as Texas, could exercise jurisdiction over

all the defendants properly joined to the Colliers' and Niemeyers' cases.

> **Factor 5.** *The balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternative forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state.  Id. at § 71.051(b)(5).*

The private/public interests balancing required by factor 5 is a codification of forum non conveniens factors the United States Supreme Court applied in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).  *See In re Omega Protein,* 288 S.W.3d at 23.  In this regard, this Court has stated:

> *Gulf Oil* instructs courts to consider the following **private interests** of the parties:  the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining willing witnesses; the possibility to view the premises, if viewing would be appropriate to the action; the enforceability of a judgment if one is obtained; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Gulf Oil* also requires courts to consider the following **public interests**:  administrative difficulties caused by litigation not handled at its origin; jury duty imposed upon people of a community that has not relation to the litigation; local interest in having localized controversies decided at home; and appropriateness of having a trial in a diversity case in a forum that is familiar with the state law that

29

> must govern the case, rather than having a court in another forum untangle problems in conflict of law and law that is foreign.

*Id.* (emphasis added). In conducting this private/public balance a "court shall consider the extent to which the injury resulted from acts or omissions that occurred in Texas." *In re Mantle Oil & Gas*, 426 S.W.3d at 194 (citing *In re Ensco*, 311 S.W.3d at 926 and *In re BPZ Res.*, 359 S.W.3d at 875).

The only contested issue is whether there was negligence within the Sugar Land office—that is, the extent to which the injuries in Kansas resulted from the acts or omissions that occurred in the Sugar Land Office. With this in mind, the ***private interests*** of the Colliers and the Niemeyers are that (1) there is an ease of access to the sources of proof in the Fort Bend County court because the evidence as to the negligence is located in Sugar Land; (2) compulsory process for attendance of unwilling witnesses, and the cost of obtaining willing witnesses is easier in the Fort Bend County court, again, because the relevant witnesses are in Sugar Land; (3) there is no reasonably likelihood that the chemical plant needs to be viewed because the negligence in Sugar Land is at issue, not the negligence at the plant; (4) the enforceability of a judgment if one is obtained is just as easily

enforced via a Texas judgment as via a Kansas judgment; and (5) given the only contested issue, all other practical problems indicate that the case can most easily, expeditiously, and inexpensively be tried in Fort Bend County, Texas. *See In re Omega Protein*, 288 S.W.3d at 23.

As for the public interests, (1) administrative difficulties that might arise are those associated with proof related to the negligence in Texas—again, there is no dispute as to what happened in Kansas, and so the case turns exclusively on establishing what happened in the Sugar Land offices; (2) jury duty would be imposed upon people of a community where the negligence took place, and therefore, the Fort Bend County citizens would be directly passing on the actions of residents from their own community and not on the actions of residents of an out-of-state community; (3) there is an important local interest in having a Fort Bend County jury pass on negligence originating in their own backyard, those acts and omissions being a localized controversy that should be decided at home; and (4) the issue of a Texas judge determining Kansas law in this case is a non-issue for the reasons discussed under Factor 2 above and because (i) the applicable Kansas and Texas negligence laws are so similar that

31

there is no concern of difficulty of interpretation for the Texas court,[7] (ii) judges are required to take judicial notice of the laws of other states, TEX. R. EVID. 202, and (iii) judges are specialized in determining questions of law the law.

> **Factor 6.** *The stay or dismissal would not result in unreasonable duplication or proliferation of litigation. Id.* at § 71.051(b)(6).

"The final factor that the trial court must consider is whether the dismissal would result in unreasonable duplication or proliferation of litigation." *In re Mantle Oil & Gas*, 426 S.W.3d at 197. A dismissal would not result in unreasonable duplication or proliferation of litigation, because once the case is resolved in Texas or Kansas the dispute will not be required to be litigated elsewhere.

## e.    Conclusion.

This Court's opinions in *In re Mantle Oil & Gas* and *In re Omega Protein* instruct that when a defendant company is located in Texas but a damaging event occurs in another state a key aspect of the inquiry is *where the negligence occurred*. Relators' directing of the

---

[7]    *Flaiz v. Moore*, 359 S.W.2d 872, 875 (Tex. 1962) (a court should only "refuse to hear a suit when the foreign law is so dissimilar to this laws of this state as to be difficult or incapable of enforcement here"); *Gurvich v. Tyree*, 694 S.W.2d 39, 46 (Tex. App.—Corus Christi 1985, no writ) ("there is no proof that the laws of Louisiana and Texas differ or that the law of Texas could not be applied effectively in Louisiana").

issue onto the fact of an explosion and resulting injuries is akin to saying that the earth is round. The roundness of the earth is no longer contested, just as the fact that an explosion which resulted in injuries to the Colliers and the Niemeyers is not contested. What *is* contested is whether the acts and omissions of Relators in Sugar Land, Texas caused the explosion and resulting injuries. All of those witnesses and documents bearing on this question are located in Texas. The trial court was attuned to the significance of this point and its relevance to the forum non conveniens issue as is obvious from its comments: "*And that is an important gap because that determines in my mind whether this should be a Kansas case or this should be a Texas case*" (*App.* 2, pp. 18-22). Now, Relators would have this Court conclude that the trial court abused its discretion even though its analytical focus was on the very factors that this Court has said in *In re Mantle Oil & Gas* and *In re Omega Protein* are the most relevant when confronted with a factual scenario like the one in this case; namely, on whether "the injury resulted from acts or omissions that occurred in Texas." *In re Mantle Oil & Gas*, 426 S.W.3d at 194 (citing *In re Ensco*, 311 S.W.3d at 926 and *In re BPZ Res.*, 359 S.W.3d at 875).

# PRAYER

Accordingly, Real-Parties-in-Interest, Donald R. Collier, Jennifer J. Collier, Dale A. Niemeyer, and Wendy Niemeyer, request that the Court deny the application for writ of mandamus.

Respectfully submitted,

/s/Timothy A. Hootman
Timothy Hootman,
SBN 09965450
2402 Pease St
Houston, TX 77003
713.247.9548; 713.583.9523 (f)
Email: thootman2000@yahoo.com

/s/ David M. Medina
David M. Medina SBN 00000088
davidmedina@justicedavidmedina.com
THE MEDINA LAW FIRM
5300 Memorial Dr., Ste. 890
Houston, TX 77007

/s/Gary M. Riebschlager
Gary M. Riebschlager
SBN 16902200
Email: gary@riebschlagerlaw.com
GARY M. RIEBSCHLAGER LAW FIRM, PC
801 Congress, Ste 250
Houston, TX 77002
281.904.1404

/s/Richard L. Tate
Richard L. Tate
SBN 19664460
Email: rltate@tate-law.com
TATE, MOERER & KING, LLP
206 South 2nd St

34

Richmond, TX 77469
281.341.0077

ATTORNEYS FOR REAL PARTIES IN INTEREST, DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, AND WENDY NIEMEYER

# CERTIFICATE OF WORD COUNT

I hereby certify that, in accordance with Rule 9.4 of the Texas Rules of Appellate Procedure, that the number of words contained in this document are 6,372 according to the computer program used to prepare this document.

Dated: October 9, 2014.

/s/Timothy A. Hootman_____
Timothy A. Hootman

# CERTIFICATE OF SERVICE

I hereby certify that, in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure, I have served the forgoing document upon the following attorneys by personal mail, by commercial delivery service, or by electronic service:

> Phillip D. Sharp
> MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
> 808 TRAVIS, 20TH F.
> Houston, TX 77002

> Lee M. Smithyman
> SMITHYMAN & ZAKOURA, CHARTERED
> 750 West 110th St
> Overland Park, Kansas 66210-2362

Dated:  October 9, 2014

/s/Timothy A. Hootman
Timothy A. Hootman

# RULE 52.3(J) CERTIFICATION

I certify that I have reviewed this response and have concluded that every factual statement in the response is supported by competent evidence included in the appendix of documents attached hereto.

Dated:  October 9, 2014.

/s/Timothy A. Hootman
Timothy A. Hootman