**In re CERBERUS CAPITAL MANAGEMENT, L.P., Cerberus Partners, L.P., Cerberus Associates LLC, Craig Court, Inc., CRT Satellite Investors LLC, and Stephen A. Feinberg, Relators.**

No. 04–0732.

Supreme Court of Texas.

May 13, 2005.

Harry M. Reasoner, Marie R. Yeates, Kenneth Prager Held, Sarah Beth Landau, Gwen J. Samora, Vinson & Elkins L.L.P., Charles W. Schwartz, Skadden Arps Slate Meagher & Flom LLP, Houston, for Relators.

R. James George Jr., Gary L. Lewis, George & Brothers, L.L.P., David E. Dunham, Donald R. Taylor, Taylor & Dunham, L.L.P., Austin, D. Douglas Brothers, Brothers & Thomas, L.L.P., Broadus A. Spivey, Spivey & Ainsworth, P.C., and Miguel Sergio Rodriguez, Austin, for Real Party In Interest.

W. Wade Porter, Allensworth & Porter, LLP, John J. McKetta III, Richard Douglas Yeomans, Graves Dougherty, Hearon & Moody, P.C., Roy Q. Minton, Minton Burton Foster & Collins, P.C., Austin, Wayne Barr, TechOne Capital Group, L.L.C., Albany, N.Y., Patton G. Lochridge, Scott Patrick Baker, McGinnis Lochridge & Kilgore, L.L.P., Austin, for Others.

PER CURIAM.

The issue in this original proceeding is whether the trial court abused its discretion in disqualifying the relators' counsel based on a conflict of interest. Because the real party in interest executed a written waiver of any potential conflict of interest, we hold that the trial court abused its discretion and we therefore conditionally grant mandamus relief.

On January 26, 2001, WSNet Holdings, Inc., hired Vinson & Elkins ("V & E") attorney Patrick Breeland to draft an asset purchase agreement for certain assets of Classic Communications, Inc. Breeland prepared an asset purchase agreement and, on January 28, 2001, forwarded it to WSNet. The next day, WSNet instructed V & E that all work on the purchase agreement should cease.

In February 2002, a WSNet shareholder instituted a shareholder derivative suit against the relators and others, alleging that the relators had usurped WSNet's corporate opportunity to purchase assets of Classic Communications and another company, Galaxy Telecom Inc. At the in-

ception of the derivative action, the relators contacted V & E regarding representation. Before appearing in the case, Charles Schwartz, then a partner at V & E and now a partner at Skadden, Arps, Slate, Meagher & Flom LLP, contacted WSNet's general counsel to inquire whether WSNet would waive any potential conflict arising from V & E's prior work for WSNet. At the time of the request, Schwartz disclosed to WSNet's general counsel the factual basis of the potential conflict. WSNet's general counsel verbally agreed to waive any potential conflict of interest.

Schwartz subsequently sent a letter to WSNet's general counsel summarizing their discussion and commemorating that WSNet had "agreed ... to waive any conflict of interest arising from" the representation of the relators in this action. The letter stated in part:

I write to confirm that, as you stated during our conversation last week, you have agreed, on behalf of WSNet Holdings, Inc. ("WSNet"), to waive any conflict of interest arising from representation of [the defendants] in the above-titled matter based on the fact that Vinson & Elkins LLP ("V & E") previously represented WSNet, Inc. in the matter described below. After full disclosure of relevant facts, you have consented to V & E representing the Defendants in the above-titled action.

WSNet engaged V & E in a limited capacity in connection with WSNet's proposed (but not consummated) acquisition of certain cable TV systems of Classic Communications, Inc. WSNet's proposed acquisition of these systems is described on pages 11 and 12 of the Petition in this matter. Cary Ferchill, then CEO of WSNet, contacted V & E attorney Patrick Breeland on a Friday in late January 2001 and requested that Mr. Breeland prepare a generic asset purchase and sale agreement in connection with WSNet's proposed acquisition of these systems. Mr. Ferchill requested that Mr. Breeland prepare this documentation over the weekend. On the following Monday, however, Mr. Ferchill informed Mr. Breeland that WSNet would not be acquiring any assets from Classic Communications, Inc. Mr. Breeland's and V & E's only participation in the transaction was to draft generic transaction documents. Mr. Breeland did not participate in any negotiations concerning the proposed transaction.

WSNet's Chief Financial Officer and Executive Vice President, Randall Jonkers, signed the letter agreement at the behest of WSNet's general counsel, to whom the letter was addressed. It is undisputed that Jonkers had reviewed the petition in the derivative action and chose not to consult with WSNet's outside counsel before signing the waiver. V & E appeared on behalf of the relators in March 2002.

In October 2002, WSNet filed a Chapter 11 bankruptcy petition, and a trustee was appointed. The trustee replaced the original plaintiff in the derivative suit but retained the same law firm to continue prosecuting the shareholder derivative suit. The derivative suit was removed to the bankruptcy court in January 2003, and later remanded to state court in August 2003. An automatic stay was imposed until October 6, 2003.

On November 14, 2003, twenty months after V & E appeared on the relators' behalf, the trustee sought V & E's disqualification based on its prior work for WSNet. The trial court ordered V & E's disqualification, holding that V & E's prior representation of WSNet was substantially related to the representation in this case, the bankruptcy trustee did not waive the right to seek V & E's disqualification, and

any purported prior waiver of a conflict by WSNet was ineffective. The court of appeals denied the relators' request for mandamus relief, and the relators now seek mandamus relief in this Court.

■ A writ of mandamus will issue only if the trial court has committed a clear abuse of discretion and the relators have no adequate remedy by appeal.[1] A trial court abuses its discretion if " 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law' " [2] or if it clearly fails to correctly analyze or apply the law.[3]

■ The Disciplinary Rules, although promulgated as disciplinary standards rather than rules of procedural disqualification, provide guidelines relevant to a disqualification determination.[4] Rule 1.05 prohibits the use of a former client's confidential information to that client's disadvantage, unless the client consents or the information has become generally known.[5] Rule 1.09(a) provides:

*Without prior consent,* a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

> (1) in which such other person questions the validity of the lawyer's services or work product for the former client; or

(2) if the representation in reasonable probability will involve a violation of Rule 1.05.[sic]

(3) if it is the same or a substantially related matter.[6]

■ We have recognized that "[d]isqualification is a severe remedy" [7] that can cause immediate and palpable harm by depriving the party of its chosen counsel and disrupting court proceedings.[8] Therefore, "[m]ere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice" to merit disqualification.[9]

■ The relators argue that disqualification was improper because V & E obtained valid oral and written waivers before appearing in this lawsuit on the relators' behalf. The bankruptcy trustee contends that the waiver letter signed by Jonkers, WSNet's Executive Vice President and Chief Financial Officer, at the behest of the company's general counsel was ineffective because it did not fully and accurately disclose the conflict. We disagree. Comment 10 to Rule 1.09 provides that "[a] waiver is effective only if there is consent after disclosure of the relevant circumstances, including the lawyer's past or intended role on behalf of each client, as appropriate." [10] The waiver letter in this case disclosed V & E's proposed

---

1. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992).

2. *Id.* at 839 (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985)).

3. *Id.* at 840.

4. *Anderson Producing Inc. v. Koch Oil Co.,* 929 S.W.2d 416, 421 (Tex.1996); *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990).

5. Tex. Disciplinary R. Prof'l Conduct 1.05(b)(3), *reprinted in* Tex. Gov't Code, tit. 2,

subtit. G app. A (Tex. State Bar R. art. X, § 9).

6. *Id.* 1.09(a) (emphasis added).

7. *Spears,* 797 S.W.2d at 656.

8. *In re Nitla S.A. de C.V.,* 92 S.W.3d 419, 423 (Tex.2002).

9. *Spears,* 797 S.W.2d at 656.

10. Tex. Disciplinary R. Prof'l Conduct 1.09 cmt. 10.

representation of the relators in the shareholder derivative suit, the subject matter of its prior work for WSNet, the time period involved, the attorney involved, the nature of the discussion with WSNet's general counsel, and how the prior representation concluded. This disclosure meets the requirements set forth in comment 10 of Rule 1.09.[11] Furthermore, it is undisputed that Jonkers signed the waiver letter after reviewing the petition and chose not to consult WSNet's outside counsel before signing the waiver. The record reveals that WSNet's files contained information regarding V & E's prior work for WSNet, including an email from V & E partner Patrick Breeland to a WSNet representative disclosing his work for WSNet and a draft of the asset purchase agreement. In addition, it is undisputed that WSNet's general counsel verbally agreed to waive any potential conflict of interest, which is a permissible, albeit inadvisable, manner of providing disclosure and obtaining consent under the Disciplinary Rules.[12] Accordingly, WSNet was adequately informed of V & E's prior representation and knowingly waived any conflict.

"Mandamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal."[13] Accordingly, without hearing oral argument,[14] we conditionally grant a writ of mandamus and order the trial court to vacate its order disqualifying the relators' counsel. We have every confidence the trial court will act in accordance with this opinion.

Justice JOHNSON did not participate in the decision.

11. *Id.; see also In re B.L.D.*, 113 S.W.3d 340, 346 n. 5 (Tex.2003) (discussing waiver for joint representation), *cert. denied*, 541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004).

12. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06 cmt. 8 ("While it is not required that the disclosure and consent be in writing, it would be prudent for the lawyer to provide potential dual clients with at least a written summary of the considerations disclosed.").

13. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig.proceeding).

14. TEX.R.APP. P. 52.8(c).