**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed August 27, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00568-CV

### IN RE JINSUN LLC, Relator

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
113th District Court
Harris County, Texas
Trial Court Cause No. 2012-54501**

## MEMORANDUM OPINION

On July 6, 2015, relator Jinsun LLC filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Michael Landrum, presiding judge of the 113th District Court of Harris County, to set aside his June 23, 2015 order granting real party in interest's motion to quash a deposition.

# I. BACKGROUND

Luxeyard, Inc. is an online purveyor of luxury goods. Real party in interest Khaled Alattar and Amir Mireskandari co-founded LY Retail LLC to own and operate an e-commerce website through which LY could sell luxury home goods using the "flash sale" retail model. In August 2011, Alattar and Mireskandari agreed to seek additional capital to become fully operational and for future growth.

Mireskandari was put in touch with Kevan Casey, who was represented as being experienced in raising capital. However, unbeknownst to Alattar and Mireskandari, Casey had allegedly been involved in previous plans to artificially inflate share prices. These plans are commonly called pump-and-dump schemes. Casey proposed that LY could obtain the needed financing by going public. LY would be turned into a publicly traded company through a reverse merger. According to Alattar, a reverse merger is an SEC-authorized means of taking a private company public in a relatively short period of time and with substantially less hassle than an initial public offering. A reverse merger occurs when a private operating company wishing to go public is acquired by a non-operating, public "shell" corporation. The owners of the private operating company exchange their ownership in the private company for the outstanding shares of the public company. After the merger, the public company changes its name to that of the previously held private company and begins operating as such.

Here, the private company was LY, and the public shell corporation was Top Gear, a Delaware corporation. Casey represented that Top Gear would become "a premier web-based group-buying retailer of luxury products at deep discounts to

2

retail prices." Initially, Top Gear would acquire a strong subscriber base and thereafter attract recognizable merchants. Top Gear would offer household goods and eventually expand its offering to broader scope of products.

On November 8, 2011, the parties executed the reverse merger, and the entity's name was changed to Luxeyard, Inc. According to Alattar, Casey and his affiliates had already obtained all of the ostensibly unrestricted or free trading stock in Top Gear, which was to be merged with LY and, therefore, controlled Top Gear prior to November 8, 2011.

Casey commenced an aggressive marketing campaign to artificially inflate the price of Luxeyard stock. Shortly thereafter, Casey and others dumped a large number of unrestricted shares, and the price of the stock then fell from a high of over $2.00 per share to $.10 per share. Alattar owned restricted shares, which could not be sold for eighteen months.

Alattar filed suit in Harris County on September 18, 2012, and has amended his petition nineteen times, alleging claims against twenty-seven defendants, who had purportedly participated in the pump-and-dump scheme while he was a shareholder in Luxeyard. Alattar further alleged that the defendants had participated in at least nine additional pump-and-dump schemes against other corporations, in which he was not a shareholder.

In January 2015, Wayne Doclefino, a former investigative reporter for KTRK TV in Houston, informed Casey that a law firm, which Dolcefino would not identify, had hired him "to do a pump-and-dump story" on Casey. Dolcefino asked Casey to discuss LuxeYard and several other companies Allatar had alleged, in the trial court,

3

to have been the subject of pump-and-dump schemes. Casey declined Dolcefino's request.

On June 5, 2015, Dolcefino wrote Mark S. Hellinger, the attorney representing defendant Jonathan Camarillo. Dolecfino stated his firm, Dolcefino Consulting, is an investigative communications firm, and he had been researching financial transactions known or suspected as pump-and-dump schemes. Camarillo's name had surfaced during Dolcefino's investigation, and Docelfino was "especially intrigued that Mr. Camarillo appears to have been implicated in litigation in these significant financial transactions, while being employed as a recruiter for the U.S. Marine Corp." Dolcefino "was planning on contacting the Pentagon media office in Washington in the coming days to test their awareness of these civil issues . . . ."

Jinsun noticed Dolcefino's deposition for June 26, 2015, serving the notice and subpoena duces tecum on Dolcefino pursuant to Rule 205.2 of the Texas Rules of Civil Procedure.[1] Tex. R. Civ. P. 205.2. Alattar filed a motion to quash Dolcefino's

---

[1] In the subpoena duces tecum, Jinsun requested that Dolcefino produce documents concerning the following: (1) communications with any party (or former party) to this lawsuit; (2) communications with counsel for any party (or former party) to this lawsuit; (3) communications with Amir Mireskandari, Alidad Mireskandari, or Yuval Ran; (4) communications with any other person, entity, or government agency relating to Luxeyard, this lawsuit, or any defendant in this lawsuit; (5) his retention or engagement by any party (or former party) to this lawsuit, counsel for any party (or former party) to this lawsuit, Amir Mireskandari, Alidad Mireskandari, or Yuval Ran; (6) payments made, or due to be made, to him by any party (or former party) to this lawsuit, counsel for any party (or former party) to this lawsuit, Amir Mireskandari, Alidad Mireskandari, or Yuval Ran; (7) his review of documents involving litigation relating to Luxeyard; (8) his research into financial transactions known or suspected to be "pump and dump" schemes; (9) work product generated by him that relate to Luxeyard, this lawsuit, or any defendant in this lawsuit; and (10) telephone records reflecting all calls he made relating to Luxeyard, this lawsuit, or any defendant in this lawsuit.

deposition, arguing that Dolcefino has a journalistic privilege and the information sought in the deposition and subpoena duces tecum is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Jinsun responded that the journalistic privilege does not apply to Dolcefino because he is no longer a reporter.

In an order signed June 30, 2015, the trial court granted Alattar's motion to quash, stating:

> Pursuant to notice dated June 23, 2015, a conference was held by telephone on June 29, 2015 concerning a dispute among the parties concerning Plaintiff's Motion to Quash Deposition of Wayne Dolcefino and Motion for Protective Order, filed June 19, 2015. The Court considered the said Motion, the response thereto filed by Jinsun, LLP on June 24, 2015 and its supplement filed on June 29, 2015, as well as the argument of counsel and relevant authority. In as much as no party asserts that Mr. Dolcefino has personal knowledge of any facts relevant to the disputed issues in this case; that it appears whatever relevant information Dolcefino may possess is available to the parties from other sources through discovery; and, that there is no compelling need for Dolcefino's research or conclusions, the Motion to Quash is granted.

The trial court's reasons for quashing Dolcefino's deposition are as follows: (1) "no party asserts that Mr. Dolcefino has personal knowledge of any facts relevant to the disputed issues in this case"; (2) "it appears that whatever relevant information Dolcefino may possess is available to the parties from other sources through discovery"; and (3) "there is no compelling need for Dolcefino's research or conclusions."

5

In this mandamus proceeding, Jinsun contends that the trial court abused its discretion by quashing Dolcefino's deposition, and it has no adequate remedy by appeal because the prohibited discovery cannot be made part of the appellate record.

## II. STANDARD OF REVIEW

To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The relator does not have an adequate remedy by appeal when the trial court has not allowed discovery, such discovery cannot be made part of the appellate record, and the reviewing court is not able to evaluate the effect of the trial court's error on the record before it. *Walker v. Packer*, 827 S.W.2d 833, 843−44 (Tex. 1992) (per curiam).

## III. ABUSE OF DISCRETION

### A. Basis for the Trial Court's Ruling

The parties dispute the basis on which the trial court granted the motion to quash. Alattar asserts that the trial court's order "tacitly recognizes Mr. Dolcefino's right to assert journalistic privilege" by its reasoning that (1) the information is available from other sources; and (2) there is "no compelling need" for Dolcefino's

6

information.  Jinsun contends that the trial court did not rule, implicitly or otherwise, that Dolcefino has a journalistic privilege.

Section 22.023 of the Texas Civil Practice & Remedies Code provides a journalistic privilege to discovery.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 22.023 (West 2015).  Section 22.024 of the Texas Civil Practice & Remedies Code sets forth the circumstances under which the journalist may be compelled to disclose certain information.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 22.024 (West 2015).[2]  One

---

[2] Section 22.024 provides:

> After notice and an opportunity to be heard, a court may compel a journalist, a journalist's employer, or a person with an independent contract with a journalist to testify regarding or to produce or disclose any information, document, or item or the source of any information, document, or item obtained while acting as a journalist, if the person seeking the information, document, or item or the source of any information, document, or item makes a clear and specific showing that:
>
> (1) all reasonable efforts have been exhausted to obtain the information from alternative sources;
>
> (2) the subpoena is not overbroad, unreasonable, or oppressive and, when appropriate, will be limited to the verification of published information and the surrounding circumstances relating to the accuracy of the published information;
>
> (3) reasonable and timely notice was given of the demand for the information, document, or item;
>
> (4) in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist;
>
> (5) the subpoena or compulsory process is not being used to obtain peripheral, nonessential, or speculative information; and
>
> (6) the information, document, or item is relevant and material to the proper administration of the official proceeding for which the testimony, production, or

requirement that must be met before a journalist may be compelled to testify or produce information is that "all reasonable efforts have been exhausted to obtain the information from alternative sources." *Id.* § 22.024(1). Although the order states the information is discoverable from the parties through discovery, the order does not use the specific language of the statute by finding that "all reasonable efforts have been exhausted."

Another requirement is that "the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist." *Id.* § 22.024(4). Although it may be argued that this language could be interpreted as requiring a "compelling need," the trial court did not use the language contained in the statute. In the absence of any language in the order tracking the language of the statute, we cannot conclude that the trial court quashed Dolcefino's deposition based on the journalistic privilege.

## B.  Personal Knowledge

Jinsun contends that the trial court abused its discretion by quashing the deposition on the ground that "no party asserts that Mr. Dolcefino has personal knowledge of any facts relevant to the disputed issues in this case." First, Jinsun argues that Dolcefino has personal knowledge of relevant facts regarding (1) his communications with Alattar and Amir Mireskandari; and (2) the basis for, and intent

disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure.

Tex. Civ. Prac. & Rem. Code Ann. § 22.024.

8

behind, his "threatening" letter to Camarillo. Jinsun intends to depose Dolcefino on these matters.

Second, Jinsun asserts that the Texas Rules of Civil Procedure do not limit depositions to people with personal knowledge of facts. Rule 192.3 provides that "[a] person has knowledge of relevant facts when the person has or may have knowledge of any discoverable matter. ***The person need not have admissible information or personal knowledge of the facts***." Tex. R. Civ. P. 192.3(c) (emphasis added); *see also In re Team Transp., Inc.*, 996 S.W.2d 256, 259 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) ("A person with knowledge of relevant facts need not have personal knowledge of the facts." (citing Tex. R. Civ. P. 192.3(c))). Rule 199.1(a) permits the deposition "of any person or entity" without any limitation that the proposed deponent have personal knowledge of the facts. Rule 205.1(a) permits a party to compel the deposition of "a nonparty," without regard to whether the nonparty has personal knowledge. Jinsun was not required to show that Dolcefino had "personal knowledge of any facts relevant to the disputed issues in this case." The trial court abused its discretion by quashing Dolcefino's deposition on the ground of lack of personal knowledge.

## C. Discovery Available from Other Sources

Jinsun further contends that the rules do not require it to pursue other methods of discovery before it may depose Dolcefino. The scope of discovery includes unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. Tex. R. Civ. P. 192.3(a); *In re CSX Corp.*, 124

S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). Discovery may be limited if (1) it is unreasonably cumulative or duplicative, or is obtainable from some other source that is ***more convenient, less burdensome, or less expensive***; or (2) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Tex. R. Civ. P. 192.4.

The trial court merely found that the information sought from Dolcefino was available "from other sources through discovery." It did not find that the discovery was available from other sources that were "more convenient, less burdensome, or less expensive." *Id.* 192.4(a).

The party resisting discovery cannot simply make conclusory allegations that the requested discovery is unduly burdensome or unnecessarily harassing, but must produce some evidence supporting its request for a protective order. *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding). Alattar did not even assert in the trial court that other sources, such as the parties, would be more convenient, less burdensome, or less expensive than taking Dolcefino's deposition. The trial court abused its discretion by granting Alattar's motion to quash on the basis that discovery was available "from other sources through discovery."

## IV. ADEQUATE REMEDY BY APPEAL

Concluding that the trial court abused its discretion, we now determine whether Jinsun has an adequate remedy by appeal. A relator may not have an adequate remedy by appeal if the trial court prohibits discovery, such discovery cannot be

10

made part of the appellate record, and the appellate court cannot evaluate the effect of the trial court's error based on the record. *Walker*, 827 S.W.2d at 843−44. The appellate court must carefully consider all relevant circumstances, including the claims and defenses asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery, to determine whether mandamus is appropriate. *Id.* at 844.

Jinsun intends to depose Dolcefino about his communications with Alattar and Amir Mireskandari and the basis for his letter to Camarillo. While Jinsun could pursue information about their conversations with Dolcefino through discovery, Jinsun does not have to rely solely on discovery from Alattar and Amir Mireskandari regarding those conversations. Dolcefino was also hired to prepare a pump-and-dump story on Casey. There has been no showing that information Dolcefino has acquired about Casey is available from other sources through discovery. Moreover, Alattar has made the other alleged pump-and-dump schemes an issue in this case, and Dolcefino went so far as to request an interview with Casey about those other schemes. We conclude that Jinsun does not have an adequate remedy by appeal.

## IV. CONCLUSION

In summary, based on the record before us, we conclude that the trial court abused its discretion by granting Alattar's motion to quash Dolcefino's deposition and Jinsun has no adequate remedy by appeal. Therefore, we conditionally grant Jinsun's petition for writ of mandamus and order the trial court to vacate its June 23, 2015 order granting real party in interest's motion to quash Dolcefino's deposition.

11

The writ will only issue if the trial court does not act in accordance with this opinion. We also deny relator's emergency motion for temporary relief as moot.


/s/     Marc W. Brown
        Justice


Panel consists of Justices Christopher, Brown, and Wise.

12