**Petition for Writ of Mandamus Denied and Majority and Dissenting Opinions filed April 23, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00047-CV

---

## IN RE JOHN HIGHTOWER, JR. AND JESSICA HIGHTOWER, Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**335th District Court**
**Washington County, Texas**
**Trial Court Cause No. 36193**

---

## D I S S E N T I N G   O P I N I O N

Though a motion for mistrial is not the same as a motion for new trial, the need to protect the right to trial by jury under the Texas Constitution counsels in favor of applying the mandamus standards recently developed by the Supreme Court of Texas for reviewing orders granting a new trial to orders granting a post-verdict mistrial. The majority concludes that the trial court's mistrial order satisfies the facial-validity requirements under this line of cases. Because the trial court did not provide an understandable, reasonably specific explanation of its reasons for

granting a mistrial, the trial court abused its discretion, and this court should grant mandamus relief.

## The Applicable Legal Standard

To get mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator lacks an adequate remedy at law, such as an appeal.[1]  A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts.[2]  Under an abuse-of-discretion standard, we defer to the trial court's factual determinations if the evidence supports them, but we review the trial court's legal determinations de novo.[3]

This court may presume, without deciding, that a trial court properly may grant a motion for mistrial after the trial court has discharged the jury and that the substance of the trial court's order was a mistrial order.  Nonetheless, a post-verdict order granting a mistrial vitiates the jury's verdict and presents the same potential to undermine the right to trial by jury under the Texas Constitution as does an order granting a new trial.  Thus, even under these two presumptions, this court should review the order granting a post-verdict mistrial under the legal standards applicable

---

[1] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).

[2] *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

[3] *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

to a trial court order granting a new trial.[4]  That means this court should look to the mandamus standards the Supreme Court of Texas has given for reviewing orders granting motions for new trial in analyzing today's case.[5]

Under these standards, a trial court granting a motion for a post-verdict mistrial must give an understandable, reasonably specific explanation of the trial court's reasons for setting aside the jury's verdict.[6]  The trial court should state one or more reasons for the ruling and those reasons should be both legally appropriate and sufficiently specific to show the trial court did not simply parrot a pro forma template but rather derived the articulated reasons from the particular facts and circumstances of the case at hand.[7]

Even if a mistrial order meets these facial-validity requirements, the courts of appeals may conduct a "merits review" of the bases for the post-verdict mistrial and grant mandamus relief if the record does not support the trial court's rationale for ordering the post-verdict mistrial.[8]

---

[4] *See Rod Ric Corp. v. Earney*, 651 S.W.2d 407, 408–09 (Tex. App.—El Paso 1983, no writ); *Anheuser-Busch, Inc. v. Smith*, 539 S.W.2d 234, 237 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ).

[5] *See In re Bent*, 487 S.W.3d 170, 172–73, 175 (Tex. 2016) (orig. proceeding); *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 757–58 (Tex. 2013) (orig. proceeding); *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding); *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 213 (Tex. 2009) (orig. proceeding).

[6] *See In re Bent*, 487 S.W.3d at 173; *In re Columbia Med. Ctr.*, 290 S.W.3d at 213.

[7] *See In re Bent*, 487 S.W.3d at 173; *United Scaffolding*, 377 S.W.3d at 688–89.

[8] *See In re Bent*, 487 S.W.3d at 173; *In re Toyota Motor Sales, U.S.A.*, 407 S.W.3d at 749.

## The Motion the Trial Court Granted

Real parties in interest Nancy and Doug Herms, Debbie Pruitt, Ixarah and Brad Pranschke, and Amy and Lance Warmke (collectively the "Real Parties") filed a "Motion for Declaration of Mistrial, Post-Trial Striking of Defendants' Answer, and Entry of Final Judgment in the Form of Permanent Injunction and Award of Attorney's Fees or, in the Alternative, Motion for Declaration of Mistrial and New Trial" (the "Motion for Mistrial"). In the Motion for Mistrial, the Real Parties complained that relators John Hightower, Jr. and Jessica Hightower presented false testimony from John Hightower that Defendants' Exhibit 106 was a photograph taken between February 2016 and April 2016, when, in fact, the photograph was taken on May 4, 2017. The Real Parties indicated in the Motion for Mistrial that because this photograph was taken on May 4, 2017, its admission into evidence violated the trial court's pretrial order excluding "[a]ny testimony, comment, argument or proffer of alleged evidence regarding alleged solutions, alternatives or fixes that somehow would alter the nature of the lights at issue in the case or otherwise cause them not to be in violation of the deed restrictions at issue or not be a private nuisance" (the "Pretrial Order"). The Real Parties also complained that the Hightowers' counsel violated the Pretrial Order by allegedly referring to solutions and remedies during closing argument.

Based on both the allegedly false testimony regarding Defendants' Exhibit 106 and the statement during closing argument, the Real Parties moved for two alternative forms of relief. First, based on these two alleged violations of the Pretrial Order, they asked the trial court to declare a mistrial, strike the Hightowers' answer, and render final judgment in the Real Parties' favor, granting them a permanent

injunction and awarding them attorney's fees.[9]  In the alternative, the Real Parties asked the trial court to declare a mistrial, grant a new trial, and award the Real Parties monetary sanctions against the Hightowers in the amount of the Real Parties' attorney's fees, paralegal fees, and costs incurred.

### The Text of the Trial Court's Order

The trial court's order reads in its entirety as follows:

> Having considered Plaintiffs' Motion for Declaration of Mistrial, Post-Trial Striking of Defendants' Answer, and Entry of Final Judgment or, in the Alternative, Motion for Declaration of Mistrial, the Response of Defendants, and the arguments of counsel, the Court FINDS:
>
> Plaintiffs did not waive their objection to the admission of Defendants' Exhibit 106. Plaintiffs obtained a pretrial ruling through the court's order in limine and preserved that objection through trial. *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 169 (Tex. 1993). Defendants' violation of that order came to light after trial. *Id.*
>
> Accordingly, the Court grants Defendants' motion and declares a mistrial. *Galvan v. Downey*, 933 S.W.[2]d 316, 321 (Tex. App.— Houston [14th Dist.] 1996, writ denied).
>
> It is so ORDERED.

In the order the trial court said that it granted the "Defendants' motion."  The Hightowers, the "Defendants," had filed a motion for judgment on the jury's verdict, but granting this motion would be inconsistent with the other statements in the

---

[9] Thus, I respectfully disagree with the majority's conclusion that "the motion for mistrial was the functional equivalent of a motion for new trial."

mistrial order. Presumably, this was a typographical error, and the trial court meant to say "the Court grants Plaintiffs' motion." If so, the trial court stated that it granted the Motion for Mistrial; the trial court did not state that it granted this motion in part.

The trial court did not identify one or more reasons the court declared a mistrial. The trial court discussed preservation of error regarding Defendants' Exhibit 106, and then stated "[a]ccordingly, the Court grants Defendants' motion and declares a mistrial."[10] In the Motion for Mistrial the Real Parties sought alternative relief based on two different alleged violations of the Pretrial Order. Even presuming that the trial court "declare[d] a mistrial" based only on the complaint regarding Defendants' Exhibit 106, the Real Parties sought two distinct types of relief based on this complaint: (1) the Real Parties asked the trial court to declare a mistrial, strike the Hightowers' answer, and render final judgment in the Real Parties' favor, and (2) in the alternative, the Real Parties asked the trial court to declare a mistrial, grant a new trial, and award the Real Parties monetary sanctions against the Hightowers. In each request, the Real Parties asked the trial court to declare a mistrial. In stating that it declared a mistrial, the trial court did not specify which of the two requests the trial court was granting.

The Real Parties cited the *Remington Arms* case in the Motion for Mistrial in support of their request that the trial court declare a mistrial, strike the Hightowers' answer, and render final judgment in the Real Parties' favor.[11] In the part of the

---

[10] Without addressing the merits of the trial court's preservation-of-error statements, it is appropriate for a trial court in circumstances such as these to address preservation of error. *See In re Athans*, 478 S.W.3d 128, 139–40 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding).

[11] *See Remington Arms Company v. Caldwell*, 850 S.W.2d 167 (Tex. 1993).

*Remington Arms* case the trial court cited in the mistrial order, the Supreme Court of Texas describes how the trial court "declared a mistrial, struck Remington's pleadings, and rendered a default judgment against Remington on issues of liability for negligence and gross negligence."[12] Though the trial court did not mention that it was striking the Hightowers' answer and rendering final judgment in the Real Parties' favor, neither did the court mention that it was granting a new trial and awarding the Real Parties monetary sanctions against the Hightowers.

In the mistrial order, the trial court mentions an "objection to the admission of Defendants' Exhibit 106." But the Real Parties complained not of an allegedly erroneous admission of evidence, but of the Hightowers' alleged presentation of "false evidence" or "untruthful" testimony as to when the photograph was taken to obtain admission of Defendants' Exhibit 106, even though that exhibit allegedly violated the Pretrial Order. In its order, the trial court did not make a finding as to when the photograph was taken or as to whether John Hightower testified untruthfully at trial on this point. Other than the reference to Defendants' Exhibit 106, the trial court did not mention any evidence upon which it relied in deciding to declare a mistrial. The trial court did not find the photograph was taken on May 4, 2017, or explain what evidence would lead to such a conclusion — a significant point because no evidence before the trial court showed that the photograph was taken on that date. The trial court did not state whether it relied upon an inspection and comparison of Defendants' Exhibit 106 with other photographs.

---

[12] *Id*. at 169.

Even presuming that the trial court found that John Hightower testified untruthfully as to the date the photograph, the Real Parties sought relief as a sanction for the Hightowers' alleged "presentation of false evidence and direct flouting of the [Pretrial Order]." Thus, the Real Parties sought this relief as a sanction for the Hightowers' alleged violation of the Pretrial Order. Yet, the trial court did not specify how the Hightowers allegedly violated the Pretrial Order in regard to Defendants' Exhibit 106. In the Pretrial Order, the trial court excluded "[a]ny testimony, comment, argument or proffer of alleged evidence regarding alleged solutions, alternatives or fixes that somehow would alter the nature of the lights at issue in the case or otherwise cause them not to be in violation of the deed restrictions at issue or not be a private nuisance." At trial John Hightower testified that Defendants' Exhibit 106 showed his arena with the lights on sometime between February 2016 and April 2016. The trial court did not specify how this testimony or the photograph falls within the scope of the evidence excluded in the Pretrial Order.

The trial court did not specify whether any untruthful testimony by John Hightower was made intentionally, knowingly, recklessly, negligently, or accidentally. Nor did the trial court address why the declaration of a mistrial was an appropriate sanction for the unspecified conduct in which the trial court found the Hightowers to have engaged.

For the foregoing reasons, in the mistrial order the trial court did not provide an understandable, reasonably specific explanation of the trial court's reasons for setting aside the jury's verdict.[13]

---

[13] *See In re Bent*, 487 S.W.3d at 178–80; *In re United Scaffolding, Inc.*, 377 S.W.3d at 689–90.

**No Record Support Under *Toyota* Merits Review**

Even presuming that (1) the mistrial order satisfied the requirements for facial validity and (2) the trial court granted the alternative requested relief based on the Hightowers' alleged violation of the Pretrial Order by presenting false testimony as to when the photograph in Defendants' Exhibit 106 was taken, the majority does not explain how the record supports such an order under its *Toyota* merits review. The record reflects that John Hightower and Wendy Biggs both testified under penalty of perjury that the picture was taken in 2016, in which case it would not violate the Pretrial Order. The record contains no testimony under penalty of perjury that the photograph was taken on any date in 2017. The record reflects that no witness at the temporary-injunction hearing testified as to when the photograph in Defendants' Exhibit 106 was taken. Even if the photograph was included in the set of photographs the Hightowers' counsel had at the temporary-injunction hearing, the Hightowers' counsel never offered those photographs into evidence, and no testimony was presented about them. No witness testified that a specific photograph, or all of the photographs, were taken in 2017, and the trial court did not find that any of the photographs were taken in 2017. The majority does not explain how the evidence is sufficient to support a finding that the photograph was taken on May 4, 2017, or that John Hightower knew that the photograph was taken on that date when he testified that it was taken in 2016.

**Conclusion**

The Supreme Court of Texas has made it clear that trial courts should not cast aside jury verdicts without reasons explained on the record. Because the trial court in today's case did not give reasons that met the high court's standard, this court

should conditionally grant mandamus relief and order the trial court to vacate the mistrial order so that the trial court has an opportunity to issue a new order that satisfies the facial-validity requirements. Because the majority concludes otherwise, I respectfully dissent.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot. (Bourliot, J., majority).