In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00295-CV**
_____

**IN RE TROJAN GROUP CONTRACTOR, INC.**

**Original Proceeding**
**284th District Court of Montgomery County, Texas**
**Trial Cause No. 22-04-05396-CV**

**MEMORANDUM OPINION**

In an interpleader action concerning a construction project and construction retainage, the project owner, 2301 South Mountain Residence Corporation ("South Mountain"), filed a motion to disqualify counsel of record for the building contractor, Trojan Group Contractor, Inc. ("Trojan"), alleging that Trojan's attorney of record had also represented South Mountain in a separate lawsuit to foreclose one of the materialman's liens on the same construction project and that the suits were substantially related. The trial court held a hearing on the motion, received evidence and testimony, and thereafter granted the motion to disqualify counsel. In a

1

mandamus petition, Trojan argues the trial court abused its discretion by disqualifying Trojan's chosen counsel because South Mountain waived any conflict of interest. For the reasons explained below, we deny the petition for a writ of mandamus.

The underlying interpleader suit was filed by New Era Life Insurance Company ("New Era"), with respect to a dispute over retainage funds. New Era deposited the retainage into the court and named defendants Trojan and South Mountain, as well as other named defendants who had filed mechanics and materialman's liens on the project. One of the other named defendants in the interpleader is L&W Supply Corporation. Trojan, represented by the Vethan Law Firm, filed an answer, as well as a counterclaim and crossclaims. In addition to claims asserted against other parties, Trojan crossclaimed against South Mountain for breach of contract and to foreclose Trojan's constitutional lien. South Mountain filed an answer and crossclaim against Trojan for breach of contract and violation of the trust fund statute.

Approximately one month after the interpleader was filed, South Mountain filed a motion to disqualify the Vethan Law Firm and its associated attorneys from representing Trojan in the interpleader lawsuit. In its Motion to Disqualify, South Mountain alleged that Trojan falsely said it had paid many of its subcontractors and material suppliers, when in fact the subcontractors and suppliers had not been paid,

leading to the filing of approximately $400,000 in mechanic and materialman's liens (M & M Liens) on the project and that the liens were filed before the interpleader suit. Additionally, in the motion to disqualify, South Mountain explained that before the interpleader was filed, one of the M & M Lienholders (L&W Supply) had filed a lawsuit to foreclose its lien against South Mountain, D.J. Saldana, and Saldana's Company, Divisions Construction (the L&W suit). A Default Judgment was sought by L&W Supply against South Mountain in that suit. Saldana took South Mountain's principal owner to see Saldana's attorneys, the Vethan Law Firm, and South Mountain then hired the Vethan Law Firm to act as counsel for South Mountain and file an answer for South Mountain in the L&W suit. Before filing an answer on behalf of South Mountain, the Vethan Law Firm met with Saldana and South Mountain's principal Zheng Heng Zheng and explained they would require Saldana and South Mountain to sign a letter agreement waiving any potential conflicts of interest. According to South Mountain, the Vethan Law Firm filed an answer on behalf of South Mountain, but it later withdrew as counsel for South Mountain in the L&W suit, and on the same day then sent a demand letter on behalf of Trojan. South Mountain argued the waiver was drafted by the Vethan Law Firm and did not mention Trojan or any disputes between South Mountain and Trojan.

In response, Trojan argued South Mountain waived disqualification and waived any complaint of a conflict. Trojan argued the waiver applied to the Vethan

3

Law Firm's representation of Trojan on its claims against South Mountain because the waiver agreement South Mountain signed stated that in the event of a conflict the parties agreed that Vethan could continue to represent Saldana and his Companies, and Saldana is a Director of Trojan. Trojan argued the L&W suit and the interpleader action are not substantially related and South Mountain had not identified confidential information in the Vethan Law Firm's possession that resulted in harm or prejudice to South Mountain.

The trial court heard South Mountain's motion to disqualify on July 29, 2022, wherein the trial court received exhibits and testimony from South Mountain's corporate representative, Zheng Heng Zheng, testimony from Saldana, and from Rex Chuang. The parties also submitted some additional legal authority to the trial court and arguments. On July 31, 2022, the trial court entered an Order reflecting its ruling and granted South Mountain's motion to disqualify the Vethan Law Firm.

The trial court's Order stated in pertinent part:

> After considering the Mot[i]on, the evidence presented and the arguments of counsel the Court finds that an actual conflict of interest exists between The Vethan Law Firm's representation of Trojan in this matter and its prior representation of South Mountain in the lawsuit filed against South Mountain by L&W Supply Corp. and that disqualification of The Vethan Law Firm in this matter is required to protect the due process rights and confidential information of South Mountain. THEREFORE,

> IT IS ORDERED The Vethan Law Firm is disqualified from any further representation of the Trojan Group Contractor[], Inc., or its affiliates, officers, agents, servants and employees in this matter.

4

In its mandamus petition, Trojan argues the trial court erred by denying Trojan its counsel of choice when South Mountain signed a conflict waiver that specifically identified the potential conflict in the first paragraph. That paragraph stated:

> We at the Vethan Law Firm ("VLF") are pleased that South Mountain Residence Corporation seeks to employ our Firm in connection with the above-referenced matter. As you already know, VLF has represented Dagoberto Saldana Jr. and Superlative Construction Inc., d/b/a Division Construction and its various corporate parents, subsidiaries, and affiliates as may exist or later be formed, [(]collectively as the "Companies") in his ongoing business affairs for some time. VLF presently represents Mr. Saldana and his Companies in various construction disputes. This technically puts the Firm in several "dual representation" and possible conflicts positions. Such potential conflicts and dual representations permitted only in certain instances, and this letter is to make sure you are completely apprised of the situation.

Trojan argues South Mountain agreed to waive any complaint of the conflict to the extent Saldana's business interests or those of his companies' conflict with South Mountain, as follows:

> In addition to providing counsel each of the Companies, we currently represent Mr. Saldana in his overall business interests. To the extent the business interests of Mr. Saldana or of the Companies conflict with South Mountain Residence Corporation, each of you acknowledge this possibility, and agrees to waive any complaint of this conflict, even with respect to matters arising in the Lawsuit or as concerns L&W generally.

Trojan argues South Mountain agreed that the Vethan Law Firm would continue to represent Saldana and his companies if the Vethan Law Firm determined there was a conflict and withdrew as counsel for South Mountain, as follows:

5

Should VLF, in its sole discretion, determine at a later date that multiple representation of the Companies and South Mountain Residence Corporation, individually, is no longer possible, the parties agree that the Firm shall withdraw from representation of South Mountain Residence Corporation, and shall continue to represent its longstanding clients, the Companies and Mr. Saldana.

Trojan contends the trial court failed to properly apply the Texas Supreme Court's guidance from *In re Cerberus Capital Management, L.P. See* 164 S.W.3d 379 (Tex. 2005) (original proceeding). According to Trojan, the waiver disclosed the Vethan Law Firm's prior representation, and the waiver letter was sufficient, that in the hearing South Mountain's corporate representative acknowledged that he knew that Saldana is a Trojan partner, and that the waiver "specifically flagged the potential conflict that predicated the subsequent motion to disqualify."

In *Cerberus Capital*, a lawyer prepared an asset purchase agreement for WSNet but was advised to stop work on the agreement because the deal would not go forward. *Id*. at 380. The following year a shareholder filed a shareholder derivative suit, alleging Cerberus Capital usurped WSNet's corporate opportunity to purchase the assets. *Id*. Cerberus Capital approached the WSNet lawyer's firm about representation and the firm obtained a written waiver from WSNet that disclosed the relevant facts about the prior representation. *Id*. at 381. The waiver letter disclosed that the lawyer had been engaged in a limited capacity in connection with the unconsummated acquisition of certain cable television systems as described in the shareholder's petition, that he prepared a generic asset purchase and sale agreement

6

over the weekend but was told on Monday the company would not be acquiring the assets, and that the lawyer did not participate in any negotiations concerning the proposed transaction. *Id*. The waiver letter also disclosed the law firm's proposed representation of Cerberus Capital in the shareholder derivative suit, the subject matter of its prior work for WSNet, the time period involved, the attorney involved, the nature of the discussion with WSNet's general counsel, and how the prior representation concluded. *Id*. at 382-83. Additionally, WSNet had in its possession the draft of the asset purchase agreement and the shareholder's petition when it waived the conflict of interest. *Id*. at 383. The Supreme Court of Texas concluded that WSNet who was a former client knowingly waived the conflict. *Id.*

We find *Cerberus Capital* is distinguishable from the facts before us in this mandamus proceeding. Notably, the waiver letter that the Vethan Law Firm obtained lacks the same detail that was present in *Cerberus Capital*. The Vethan Law Firm's letter fails to mention Trojan, its constitutional lien, or any potential litigation concerning the retainage in South Mountain's project. The waiver fails to specify that by waiving a conflict of interest as to the L&W suit, South Mountain had consented to the Vethan Law Firm representing Trojan on any affirmative claims against South Mountain in the same or in a subsequent lawsuit.

Trojan also argues the L&W suit and the New Era retainage interpleader lawsuit are not substantially related. According to Trojan, in the L&W suit, L&W

7

Supply was suing on an unpaid drywall invoice and according to Trojan, in the interpleader suit, Trojan has crossclaims against South Mountain because Trojan has a constitutional lien on the retainage funds, so Trojan argues the claims are not substantially related.

Matters are substantially related if specific facts tie the former and current representations together and create a genuine threat of disclosure of confidences revealed to counsel in the former representation. *In re Thetford*, 574 S.W.3d 362, 374 (Tex. 2019) (orig. proceeding). L&W Supply's suit to foreclose its materialman's lien against South Mountain's property is substantially related to the retainage suit because South Mountain alleges Trojan breached the construction contract on the same project by failing to pay L&W Supply's claim.

"[A] trial court's decision regarding disqualification, based on a careful, thorough consideration of all the evidence, is entitled to great deference by an appellate court." *Id.* at 365. After reviewing the parties' arguments and the mandamus record, the trial court appears to have carefully and thoroughly considered the evidence presented on the issue, and relator has failed to establish a clear abuse of discretion by the trial court. Accordingly, we deny the petition for a writ of mandamus.

PETITION DENIED.

PER CURIAM

Submitted on September 19, 2022
Opinion Delivered October 20, 2022

Before Kreger, Horton and Johnson, JJ.