**Opinion filed November 14, 2025**



# In The

# Eleventh Court of Appeals

_____

## No. 11-25-00257-CV

_____

## IN RE LIBERTY COUNTY MUTUAL INSURANCE COMPANY

**Original Mandamus Proceeding**

## O P I N I O N

Relator, Liberty County Mutual Insurance Company, filed this original petition for writ of mandamus asserting that Respondent, the Honorable Thomas M. Wheeler, presiding judge of the 350th District Court of Taylor County, abused his discretion when he declined "to abate Real Party in Interest's [Sharron Ann Sibley's] declaratory action for [underinsured motorist] benefits," the UIM suit, "until liability and damages against the tortfeasors have been determined" in a separate cause of action, the personal injury suit.[1]  Liberty requests that we order Judge Wheeler to

---

[1]The personal injury suit, which is pending in the 42nd District Court of Taylor County, is in trial court cause no. 52213-A and is styled *Sharron Ann Sibley v. Eric Anthony Bonilla and Extreme Exteriors Garden Center, LLC*.

grant its motion to abate the UIM suit until the personal injury suit is resolved. Because we conclude that the trial court clearly abused its discretion in denying Liberty's motion to abate and that Liberty has no adequate remedy by appeal, we conditionally grant mandamus relief.

## I. *Factual and Procedural Background*

Sibley filed the UIM suit against Liberty on December 1, 2023, alleging that she suffered injuries in a vehicle collision that were caused by the negligence of an underinsured driver, Eric Bonilla. Sibley pled that "she would be legally entitled to recover damages from the Underinsured Driver," that she "is an insured" by virtue of her insurance policies with Liberty, and that she "is entitled to [recover] under the 'Uninsured/Underinsured' and 'Excess Uninsured/Underinsured' provisions" of her policies with Liberty. Sibley sought a declaration that "her damages resulting from the motor vehicle collision, that those damages fall within the coverage afforded her." She also sought a declaration "specifying the amount of damages, attorney's fees, interest, and court costs" that Liberty must pay.

Liberty then filed a third-party petition asserting negligence against Bonilla and negligent entrustment against Bonilla's employer, Extreme Exteriors Garden Center, LLC (Extreme Exteriors), and seeking contribution from both. The trial court granted Bonilla's and Extreme Exteriors' motions to continue and bifurcate, but it denied Sibley's motion to sever. Sibley then filed a second and a third amended petition joining Bonilla and Extreme Exteriors as defendants.

Next, Liberty filed a motion to sever the UIM claim from the personal injury claims and to abate it until the "negligence action has been resolved." At the hearing on the motion, Liberty represented that it consented to be bound by a judgment in the "liability and damages standard lawsuit." Sibley then orally nonsuited her claims against Bonilla and Extreme Exteriors. Sibley later filed a notice of nonsuit, which

2

the trial court granted, and her case against Liberty was set for trial for September 22, 2025.

However, on July 1, 2025, Sibley filed the personal injury suit against Bonilla and Extreme Exteriors in a separate cause. Liberty filed a petition in intervention in that suit "to protect its subrogation rights under Sibley's insurance policy." On August 4, 2025, Liberty filed its second motion to abate in the UIM suit, asking that the trial court abate the suit until the resolution of the personal injury suit. On August 19, 2025, the trial court denied Liberty's motion. On September 9, 2025, Liberty filed this petition for writ of mandamus as well as a motion for emergency relief seeking to stay the September 22 trial date in the UIM suit. We granted the motion and ordered that the trial setting be temporarily stayed pending further order of this court or final disposition of this mandamus proceeding. Sibley subsequently filed a response to the petition for writ of mandamus.

## II. *Mandamus*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court clearly abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

### III. *UIM Actions*

Liberty argues that Texas case law requires that "the underlying [UIM] suit must be abated until the [s]eparate [p]ersonal [i]njury [s]uit is resolved." Liberty states that it has provided written consent to be bound by the judgment in Sibley's personal injury suit; therefore, any negligence judgment in that case will be binding on Liberty in the UIM suit. Liberty maintains that proceeding to trial in the UIM suit first "would risk inconsistent judgments, an advisory opinion, and impermissibly expose [Liberty] to conflicting obligations."

Sibley responds that Liberty is only entitled to an abatement of the UIM suit in instances "where an insured attempts to combine extracontractual claims against her carrier with the underlying liability claims" because the liability trial determines "whether the carrier owes its insured UIM benefits in the first place." Sibley asserts that an abatement is not required here because she has sued Liberty only "to determine its liability under the insurance contract," as Texas law permits.

### A. *Applicable Law*

The Texas Insurance Code states:

> [UIM] coverage must provide for payment to the insured of all amounts that the insured is *legally entitled to recover* as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

TEX. INS. CODE ANN. § 1952.106 (West 2022) (emphasis added). "[UIM] coverage protects insureds when damages from a vehicle collision exceed an at-fault motorist's liability policy limits." *In re State Farm Mut. Auto. Ins. Co.*, 712 S.W.3d 53, 56 (Tex. 2025) (orig. proceeding).

Under Texas law, an insurer "is under no contractual duty to pay [UIM] benefits until the insured obtains a judgment establishing the liability and

underinsured status of the other motorist." *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) (citing *Henson v. S. Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 653–54 (Tex. 2000)). In other words, a judgment establishing the alleged tortfeasor's liability is a condition precedent that must be satisfied before an injured party can recover breach of contract damages under a UIM provision. *See id.* The Texas Supreme Court "has constructed a distinctive procedure for UIM litigation. A 'car crash' trial typically determines the third-party motorist's liability and the insured's damages, and the insured must obtain a favorable judgment as a condition precedent to [invoking] UIM coverage." *State Farm*, 712 S.W.3d at 56.

The liability judgment need not be against the alleged tortfeasor, however, as "[t]he insured may settle with the tortfeasor . . . and then litigate UIM coverage with the insurer." *Brainard*, 216 S.W.3d at 818. In other words, "*[i]f not otherwise determined* . . . a judgment establishing . . . prerequisites to coverage may be obtained in a direct action against the insurance carrier." *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 265 (Tex. 2021) (emphasis added). And these prerequisites may be triggered by a declaratory judgment against the insurer establishing that the other motorist was at fault and underinsured. *Id.* at 267 ("[A] declaratory judgment action is the appropriate remedy for determining the underlying tort issues that control the validity of an insured's UIM claim against his insurer."). In approving the use of a declaratory judgment action to establish UIM coverage, the Fourth Court of Appeals reasoned:

> Without the options of an agreed judgment, a settlement, or an admission of liability from the [UIM], an insured faces the unduly burdensome and inefficient task of rejecting the tortfeasor's policy limits offer and instead participating in a full-blown adversarial trial to obtain a judgment so he can then turn around and make a claim *against his own insurer to recover benefits for which he paid. That is simply unreasonable where, as here, the tortfeasor has already paid policy limits to settle her claim and there is no real dispute that the insured's*

*damages exceed his recovery from the tortfeasor.* Given the [Uniform Declaratory Judgments Act's (UDJA)] purpose of settling uncertainty with respect to a party's rights, we hold that an insured may use the UDJA to establish the prerequisites to recovery in a [UIM] claim.

*Allstate Ins. Co. v. Irwin*, 606 S.W.3d 774, 777–78 (Tex. App.—San Antonio 2019), *aff'd*, 627 S.W.3d 263 (Tex. 2021) (second emphasis added) (internal citations omitted). Summarizing the above principles, the Texas Supreme Court has identified three pathways for establishing UIM coverage:

(1) sue the insurer directly to establish the motorist's fault and the insured's damages without suing the motorist; (2) sue the underinsured motorist with the insurer's written consent, making the negligence judgment binding against the insurer for purposes of the insurer's liability under the UIM policy; or (3) sue the underinsured motorist without the insurer's written consent and then relitigate the issues of liability and damages in a suit for benefits under the UIM policy.

*In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 880–81 (Tex. 2021) (orig. proceeding).

B. *Analysis*

As set out above, Sibley has sued the underinsured motorist, and Liberty has consented to be bound by the judgment that Sibley secures in her personal injury suit. Sibley has yet to settle or otherwise resolve her claim against the tortfeasors. *See State Farm*, 712 S.W.3d at 56. We agree with Liberty's observation that this case presents the unique scenario where there is yet no indication that the tortfeasors are in fact underinsured. Rather, representations in the record indicates that the applicable insurance coverage for the tortfeasors may total $3,000,000, and there has been no showing that Sibley's damages will likely exceed that amount.[2]

---

[2]Liberty pleads that there is $3,000,000 in available coverage from the alleged tortfeasers. Sibley pleads for "over $1,000,000.00" in damages in both her third amended petition in the UIM suit and her original petition in cause number 52213-A.

Despite no indication that the tortfeasors are, in all probability, underinsured, Sibley maintains that she is permitted by Texas case law to "sue the insurer directly to establish the motorist's fault and the insured's damages without suing the motorist." But this scenario is patently not available to Sibley here because she has sued the motorist and his employer, and those liability claims remain pending. In UIM suits against the insurer solely, there must be some resolution of the personal injury claim, thus demonstrating the *need* for the UIM suit. *See e.g.*, *State Farm*, 712 S.W.3d at 57 (tortfeasor settled prior to initiation of the UIM suit); *USAA*, 629 S.W.3d at 881–82 (UIM claim was abated until settlement was reached with tortfeasor); *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 871 (Tex. 2021) (orig. proceeding) (tortfeasor settled prior to UIM suit); *Irwin*, 627 S.W.3d at 266 (same); *Brainard*, 216 S.W.3d at 811 (tortfeasor settled prior to trial against the UIM carrier). As noted above, it is unreasonable to require that an insured pursue a "full-blown adversarial trial . . . where . . . the tortfeasor has already paid policy limits to settle her claim and there is no real dispute that the insured's damages exceed his recovery from the tortfeasor." *Irwin*, 606 S.W.3d at 777–78. However, that scenario is not presented here.

We conclude that under well-established case law governing UIM coverage, Sibley must resolve her personal injury suit before she may pursue the UIM suit against Liberty. Accordingly, we hold that the trial court clearly abused its discretion in denying Liberty's motion to abate the UIM case until the personal injury suit is resolved. *See In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019).

"A trial court's failure to grant a motion to abate usually is an incidental ruling not subject to mandamus." *State Farm*, 712 S.W.3d at 66. "[H]owever, no appellate remedy adequately protects [an] insurer's 'substantial right' not to undergo costly discovery and litigation expenses on [UIM coverage] issues that may be wholly

unnecessary depending on the outcome of [a personal injury suit]." *Id.* (discussing the failure to abate extracontractual claims pending resolution of UIM coverage claim). On this record, we conclude that Liberty has established its right to mandamus relief. *See Prudential Ins.*, 148 S.W.3d at 135–36.

## IV. *This Court's Ruling*

We conditionally grant Liberty's petition for writ of mandamus. We direct the trial court to vacate its August 19, 2025 order denying Liberty's motion to abate and to enter an order granting the motion. A writ of mandamus will issue only if the trial court fails to comply by November 28, 2025.


W. BRUCE WILLIAMS

JUSTICE


November 14, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.